Genever LEWIS, individually, and as general guardian of Annette Lewis and Manuel Lewis, and as representative of a class of unnamed plaintiffs similarly situated, Plaintiff,

v.

Pauline STARK et al., Defendants.

Margaret PERCY and Melvin Jones et al., Plaintiffs,

v.

John MONTGOMERY et al., Defendants.

Nos. 50238, 50285.

United States District Court,
N. D. California.

Dec. 19, 1968.

Berkeley Neighborhood Legal Services, R. Corbin Houchins, for plaintiffs.

Cecil F. Poole, U. S. Atty., San Francisco, Cal., with Asst. U. S. Atty. William B. Spohn, for Secretary of Health, Education and Welfare.

Elizabeth Palmer, Deputy Atty. Gen., Thomas C. Lynch, Atty. Gen. of California, San Francisco, Cal., for defendants.

Before HAMLIN, Circuit Judge, and ZIRPOLI and WOLLENBERG, District Judges.

## MEMORANDUM OPINION

### PER CURIAM.

Plaintiffs seek in their own behalf and as representatives of their respective classes to have this court declare that section 11351 of the California Welfare and Institutions Code, and the related sections of the California Public Social Services Manual (PSSM), are contrary to federal regulations interpreting the Social Security Act and are unconstitutional.

The original plaintiffs in this action were Genever Lewis (Civ. No. 50238) and Margaret Percy (Civ. No. 50285). These plaintiffs sued on behalf of themselves, their children, a man assuming the role of spouse (MARS) in the Percy home, and all other individuals similarly situated. Motions to intervene were made prior to the date set for consolidated hearing, and those motions brought before this court two families with a stepfather instead of a MARS, as well as a third family with a MARS. By virtue of the circumstances of the original plaintiffs and the intervenors, leave to intervene would appear mandatory, Fed.R.Civ.Proc. 24(a). Any findings of this court contrary to the interests of the MARS would apply a fortiori to the stepfather. For this reason the motions to intervene in No. 50285 are granted to Virginia Sims, Mary J. Garner, Bertha Bell and their minor children, and to Humberto Garcia and his minor child, and Haywood Bell. For this reason also this court will refer only to the claims raised by the MARS and will not treat separately the claims of the stepfather, as we deem it unnecessary to do so.

## I

## INTRODUCTION

The federal government maintains in cooperation with the states, a program of assistance to families with dependent children (AFDC). According to one provision of the controlling federal statute, the Social Security Act, "A State plan for aid and services to needy families with children must * * * (7) provide that the State agency shall, in determining need, take into consideration any other income and resources of any child * * * claiming aid to families with dependent children, * * * as well as any expenses reasonably attributable to the earning of any such income * * *." 42 U.S.C. 602(a) (7). The federal government and the state of California are in disagreement as to the proper method of taking "into consideration any other income and resources of any child" when there is present in the family a "man assuming the role of spouse." Regulations issued by the Department of Health, Education and Welfare in August, 1968 permit a state to take into account contributions from a MARS only if there is "proof of actual contributions".[1]

---

1. 45 C.F.R. § 203.1:

(a) A State plan for aid and services to needy families with children under part A of title IV of the Social Security Act to be approved under section 402 of such Act (42 U.S.C. 602), must provide that the determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his father, will be made only in relation to the child's natural or adoptive parent, or in relation to a child's stepparent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children.

(b) The inclusion in the family, or the presence in the home, of a "substitute

California proceeds differently. It obligates a MARS to support the children in the home if he is able. "[A]n adult male person assuming the role of spouse * * * *is bound to support,* if able to do so, his wife's children if without support from such * * * adult male person they would be needy children eligible for aid under this chapter." Cal.Welf. & Inst.Code § 11351 (emphasis added).[2] The MARS' ability is determined by the state according to established categories of allowable income and deductions. Under California's statute and regulations, the amount of assistance to the needy family is reduced by the amount of income which the state has computed to be available from the MARS.[3] Under the HEW regulations, the amount of assistance may be reduced

parent" or "man-in-the-house" or any individual other than one described in paragraph (a) of this section is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State. As provided in Interim Policy Statement No. 4 (33 F.R. 10230, July 17, 1968), items 3.C.2(i) and (iii), and 6(ii), in the consideration of all income and resources in establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in paragraph (a) of this section will be considered available for children in the household in absence of *proof of actual contributions.* (Emphasis added.).

2. Section 11351 reads in full as follows:
"Where a needy child lives with his mother and a step-father or an adult male person assuming the role of spouse to the mother although not legally married to her, the amount of the grant made pursuant to Section 11450 of this code shall be computed after consideration is given to the income of the stepfather or such adult male person. The county granting aid shall determine if the stepfather or such adult male person is able to support the child either wholly or in part. The determination shall be based upon a standard which takes into account the stepfather's or such adult male person's income and expenses under regulations adopted by the department.
Notwithstanding the provisions of Section 209 of the Civil Code, a stepfather or such adult male person is bound to support, if able to do so, his wife's children if without support from such stepfather or adult male person they would be needy children eligible for aid under this chapter. However, such liability for support shall not exceed the wife's community property interest in his income.
A natural father is not relieved of any legal obligation to support his children by the liability for their support im-posed upon their stepfather by this section.
As used in this section, 'adult male person' means any male person of age 18 years or older."

3. The statute is set forth in note 2, *supra.* The following regulations are contained in the Public Social Services Manual:
42–535 Responsibility of man assuming the role of spouse.
AFDC .1 *Definition—Man Assuming the Role of Spouse*
A man will be considered to be assuming the role of spouse if it has been found that he is not married to the mother and not the father of any of her children, but that:
.11 He is in or around the home and is maintaining an intimate relationship with the mother; *and*
.12 Either he has assumed substantial financial responsibility for the ongoing expenses of the *AFDC* family; *or*
.13 He has represented himself to the community in such a way as to appear in the relationship of husband or father, or both.
.2 *Responsibility of Man Assuming Role of Spouse for Support*
The man assuming the role of spouse is responsible for the support of:
.21 His children
.22 To the extent of his ability, the mother and her needy children. He is *not* included in the Family Budget Unit with the mother.
* * * * *
44.133 Treatment of Income (Continued)
AFDC .5 *Income of Unmarried Father and a Man Assuming the Role of Spouse*
.51 The amount the unmarried father or man assuming the role of spouse is able to contribute to the *AFDC* family is net income to the FBU.
.52 In situations in which the children of the unmarried father and mother' are eligible for *AFDC* on the basis of unemployment or in-

only by the amount of proved contributions. Thus the situation can arise in California where the state will regard the family to be living on money which the MARS is actually spending for purposes not recognized by the allowable deductions (living expenses, job-related expenses, court-ordered child support payments and medical care). Therefore, despite the presence in the home of a MARS earning sufficient income to support the family, the family may still be in actual need. Under the HEW regulations the family is considered needy; under California law it is not.

Plaintiffs, representing mothers, children, stepfathers, and MARS in families whose assistance has been modified under California's statute and regulations cite the HEW regulation, and the equal protection clause, the due process clause, and the right to privacy as bases for overturning the California practice to which they object. Plaintiffs seek a temporary order restraining the enforcement of the California budgetary rules, and declaratory and injunctive relief. This three-judge court was convened pursuant to 28 U.S.C. §§ 2281, 2284, and jurisdiction rests on 42 U.S.C. § 1983. Defendants have moved to dissolve the three-judge court for lack of a

substantial federal question and to dismiss the complaint without leave to amend for failure to state a claim.

## II

### HEW REGULATIONS

Plaintiffs contend that the HEW regulations must prevail over the California practice because the regulations were adopted pursuant to an act of Congress. We disagree, for we find the California practice, and not the HEW regulations, to be in accord with the Social Security Act. As mentioned above, the Act requires the states, in determining need, to consider "any other income and resources of any child." 42 U.S.C. § 602(a) (7). The Act does not instruct states to consider only resources guaranteed by the legal consequences of a marital or biological relationship. Nor does the Act instruct the states to consider only resources whose receipt by the child has been proved.

The HEW regulations, however, bar from state consideration resources controlled by a MARS. It is just these resources that California takes into account under Welf. & Inst. Code, § 11351. The statute obligates the MARS to support the children in the home to the ex-

---

capacity of the unmarried father, all the children of either parent in the home may be eligible for *AFDC.* In such cases the unmarried father and the mother and all the children are included in the FBU and all income of these persons is income to the FBU.

.53 In all other situations, the ability of either the unmarried father or the man assuming the role of spouse to contribute to the FBU is determined as follows:

*Step 1.* Determine total need in accordance with the AFDC assistance standard for the family consisting of the members of the FBU, the unmarried father or man assuming the role of spouse, and his children living in the home.

*Step 2.* Determine total need of the FBU.

*Step 3.* Compute the difference between the two budgets to determine the amount that represents the need of the unmarried father or man assuming the role of spouse for purposes of establishing his responsibility to meet his own needs and the extent of his responsibility to contribute to the FBU.

*Step 4.* From the needs determined in *Step 3,* deduct his net income computed in accordance with Section 44–113 to establish his ability to contribute to the FBU.

a. If his income exceeds the need, the excess is income to the FBU.

b. If his income does not exceed the need, there is no income to the FBU. His children are needy and may qualify for AFDC as a separate case if his income is less than the need.

tent he is able to do so and modifies the amount of assistance to the extent of the MARS' ability. In light of this statutory obligation, income to the MARS beyond his expenses is *by law* a resource of the child. For California to ignore this resource would be to violate rather than conform to the Social Security Act. By withholding from California's consideration certain resources of the MARS, available according to the State's determination and applicable by law to the support of the child (although not proved to have been actually thus employed), the HEW regulations contravene the command of § 602(a) (7) to consider "other resources of the child." It is therefore California that is in conformity with the Social Security Act. The HEW regulations, having been issued contrary to the congressional mandate, are, in the view of this court, invalid. They exceed the Secretary's authority to make "rules and regulations, not inconsistent with" the Social Security Act. 42 U.S.C. § 1302. The Secretary has, of course, the "power to fill up the details" United States v. Shreveport Grain & Elevator Co., 287 U.S. 77, 85, 53 S.Ct. 42, 44, 77 L.Ed. 175 (1932), but he is nevertheless "required to follow Congressional mandate, whether explicit or ascertainable in underlying policy." United Steelworkers of America v. N. L. R. B., 129 U.S.App.D.C. 80, 390 F.2d 846, 851 (1968). The Supreme Court recently articulated the underlying policy by saying "that Congress expected 'breadwinners' who secured employment would support their children. This congressional expectation is most reasonably explained on the basis that the kind of breadwinner Congress had in mind was one who was *legally obligated* to support his children." King v. Smith, 392 U.S. 309, at 329, 88 S.Ct. 2128, at 2139, 20 L.Ed.2d 1118 (emphasis added). The HEW regulation, by requiring proof of actual contributions from a MARS, reduces the expectation of Congress to a mere hope. California, on the other hand, shares the congressional expectation. By creating a rule out of harmony

with the enabling statute, HEW has created a mere nullity. Manhattan General Equipment Co. v. C.I.R., 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528 (1936). California, therefore, is not in conflict with any valid federal law.

■ In addition to upholding the California practice for the reason that the HEW regulation violates the policy of the Social Security Act, this court also finds that the regulation, by dictating to the states the manner in which they shall consider income and resources, intrudes upon an area reserved by federal law and policy to the states. As the Supreme Court has noted, the "AFDC program is based on a scheme of cooperative federalism." King v. Smith, 392 U.S. at 316, 88 S.Ct. at 2133. Under this scheme, the states have the sole responsibility for determining the standard of economic security. Moreover, the legislative history of the Act makes clear that the States have the sole power to determine who is needy. *Id.* at 319 n. 14, 88 S.Ct. 2128. As one Representative said during the floor debates, "need is to be determined under the State law." *Id.* at 319 n. 14, 88 S.Ct. at 2134. California has simply exercised the power that Congress intended the states to have. It is not for the Secretary to prohibit California from; (a) statutorily imposing an obligation of support on the MARS to the extent of his ability; (b) determining that to this extent the child is not needy; and (c) reducing the child's assistance accordingly. As the Supreme Court has pointed out, this authority was intended for the states prior to the Act's passage and has been reserved to the states by § 402(a) of the original Act, carried forward without change in this respect to the present day. 42 U.S.C. § 602(a) (1967 Supp.)

### III

### EQUAL PROTECTION

■ Plaintiffs claim that the challenged provisions of California's welfare program deny equal protection to two classes: (1) needy children who

reside with a MARS, and (2) the MARS himself. The thrust of plaintiffs' objection is that the classifications drawn by the legislature are not reasonably related to the purposes of the statute, and that it is unconstitutional to impose on the children and the income-earning MARS in a family receiving AFDC payments a burden that is not imposed on AFDC children without an income-earning MARS or on a MARS living with a non-AFDC family.

In resolving conflicts turning on equal protection, this court is guided by the content given to the equal protection clause by the United States Supreme Court. In Morey v. Doud, 354 U.S. 457, 463–464, 77 S.Ct. 1344, 1349, 1 L.Ed. 2d 1485 (1957), the Court offered four rules for testing discrimination in social legislation. First, the equal protection clause does not deprive the states of a "wide scope of discretion", and a statute having a reasonable basis will be upheld. Second, a failure of "mathematical nicety" or the creation of "some inequality" is not offensive to the equal protection clause. Third, a classification will be sustained "if any state of facts reasonably can be conceived that would sustain it." Fourth, the burden is on the attacker to show no reasonable basis. This test has been applied to strike down a state statute excepting a named company from state regulation, Morey v. Doud, *supra;* to strike down a state rule prohibiting illegitimate children from bringing a wrongful death or survival action for the death of their mother, Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); and to strike down a state rule selectively prohibiting the mother of an illegitimate child from recovering for injury or death to the child in some circumstances but not in others, Glona v. American Guarantee & Liability Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968). The Supreme Court could find no possible rational basis for these legislative classifications.

Turning to the contentions raised by plaintiffs in the present case, this court first finds that there is no discrimination of any sort in regard to the AFDC children. Plaintiffs complain that the mere presence of the MARS puts the children in an "inferior status", and seek vindication by making an analogy to the *King* case. Plaintiffs' line of argument is erroneous for the reason that the modification of assistance takes place equally for all AFDC children if they have other resources available to them. Children in a MARS family are not discriminated against. They receive equal treatment with all other children receiving AFDC assistance.

Plaintiffs' analogy to the *King* case and characterization of the California practice as a subtle version of Alabama's statute are highly inaccurate. In *King,* the man found by Alabama to be a substitute father lived with his own family and made no income or resources available to the supposed "substitute" child and its mother and clearly had no ability to contribute to their support. Worse, the Alabama regulation made deprived children ineligible for aid due solely to the sexual conduct of their parent. Thus, the *King* case raised "only the question whether the State may deal with these problems [of immoral conduct and illegitimacy] in the manner it has here—by flatly denying AFDC assistance to otherwise eligible dependent children." 392 U.S. at 320, 88 S.Ct. at 2135.

This case is quite different. Here we have a California statute and regulations which deal with a man who actually is "in or around the home" and either assumes financial responsibility or represents himself to the community as the husband or father, not one who, as in *King,* had an occasional rendezvous with the mother. More importantly, California does not disqualify otherwise eligible needy families for aid because of the mother's sexual behavior; it simply considers the man's income in computing the welfare grant. It provides for a reduction of payments to the extent the man

has *actual* ability to support.[4] The state of California does not reduce welfare grants because of the frequency of sexual relations or the presence of illegitimate children, but because of the actual presence of a breadwinner in the home of the applicant or recipient of aid. That breadwinner must, if able to do so, support his "adopted" child.[5]

Thus, California, unlike Alabama, does not deny or modify AFDC grants to "destitute children who are legally fatherless * * * on the transparent fiction that they have a substitute father." 392 U.S. at 334, 88 S.Ct. at 2142. California determines whether a legally fatherless child is destitute before granting, limiting or denying aid, and that determination includes the "reasonable" inquiry whether the child has a MARS to look to for support which the state obligates him to provide.

This court can easily conceive of rational purposes that justify the modification of assistance in light of a MARS' net income. To the extent that the number of beneficiaries and the amount of their assistance can be reduced according to their administratively determined need, it may be possible to increase the amount of assistance to other recipients whose needs are not met by the present level of assistance without increasing the level of appropriations. Also, it is certainly permissible for any program of government spending to minimize expense where possible, and the net income of a MARS living with recipient children is a rational incident for such expense minimization.[6]

It is not invidious for the legislature to eliminate the financial bonus that would, in the absence of California budgetary rules, accrue to unmarried couples receiving AFDC benefits. In the absence of the obligation imposed by Welf. & Inst. Code, § 11351, a MARS could engage in all aspects of family life while shifting the expense of supporting the children in the home from himself to the state. By imposing the support obligation on the able MARS, the state was justifiably eliminating this evasionary device.

Moreover, in cases where the AFDC child's natural father has established a new family, the legislature was making the socially advantageous choice of permitting the natural father to devote his resources to his new family so long as the MARS is able to provide support for the AFDC family.

In this context, the court is unable to say that California acts toward AFDC recipients in a MARS family in a way that is invidiously discriminatory. Levy v. Louisiana, *supra*. The plaintiffs have failed to discharge their burden of showing that the California budgetary rules have no reasonable basis. We therefore find that the program for assistance modification does not deny AFDC children equal protection of the laws.

Plaintiffs' second argument that the MARS is denied equal protection is likewise without merit. Plaintiffs contend that, because the support obligation of a MARS exists only for children receiving AFDC assistance, the MARS in a welfare family is treated differently from a MARS in a non-welfare family. This contention is of course true, but it is also irrelevant. The obligation imposed on the MARS in an AFDC family is part of a comprehensive pattern of child-support statutes directed variously at natural parents, Cal.Civ.Code, §§ 137, 137.1, 137,2, 139, 143, 196, 196a, 199, 230, and Cal.Pen.Code, § 270; adoptive parents, Cal.Civ.Code, § 228; and stepfathers and men assuming the role of spouse, Welf. & Inst. Code, § 11351. These obligations differ according to need and to the nature of the "parental" relationship. To be sure, a MARS in a non-AFDC family is free of support ob-

4. See note 3 *supra.*

5. See note 2 *supra.*

6. *See* Lewis & Levy, Family Law and Welfare Policies: The Case for "Dual Systems", 54 Calif.L.Rev. 748, 775–76 (1966).

ligation. But this court cannot say that the "discrimination" against the MARS in the AFDC family results from a distinction that has no relevance to the purpose for which the classification was made. Rinaldi v. Yeager, 384 U.S. 305, 309, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966). It is not invidious for the legislature to recognize that in a society of many cultures and many impoverished individuals, perfectly stable, though informal, families will inevitably arise.[7]

This court is not unaware that the state's policy may induce some men to depart from the home so that the family may continue to receive welfare payments without reduction for amounts determined by the state to be contributed by the MARS. Men who respond to this inducement undoubtedly deprive themselves of the resources of family life and may also create a less advantageous situation for the children because of their absence. Nevertheless, this court cannot say that the California legislature has been wholly arbitrary in incurring this risk. As some commentators have observed, the only employable males likely to be thus influenced to forsake their "families" would be "(1) those who would rather use their own income on themselves to the exclusion of their families, and (2) those who would be tempted to desert their families simply because the taxpayers' contribution to the family's income is eliminated."[8] This court cannot say that California has acted arbitrarily or wholly irrationally in choosing to risk the continued existence of such tenuous families rather than encourage irresponsible males to shirk the responsibilities which society has chosen to impose on family breadwinners. To be sure, "any policy is likely to produce some undesirable side effects",[9] but we believe that these consequences are within the boundaries of the equal protection clause. Plaintiffs' second objection, therefore, must fail.

## IV

## DUE PROCESS

Earlier in this opinion, we mentioned the possibility that California will regard a family seeking AFDC assistance as living on money deemed available from the MARS even though actually put to other uses. This situation arises where the MARS makes expenditures that are not covered by the state-allowed deductions for living expenses, job-related expenses, court-ordered child support payments, and medical care. Money spent for other, non-deductible, purposes is deemed by the state to be net income available to the family. Under Welf. & Inst. Code, § 11351, such net income is required to be applied to the needs of the family. To the extent of such net income, therefore, the state reduces the amount of assistance to the AFDC family. The state does not abstain from making the reduction though the MARS fails to apply his net income to the family. Plaintiffs contend that this, the State's refusal to consider that MARS' income is not being applied to the needs of the AFDC family is a denial of due process.

Plaintiffs' argument has an initial attraction. One rebels at the notion that the State may assume facts that do not exist and then reduce benefits on the basis of those nonexistent facts. Yet closer analysis entirely dispels the persuasiveness of plaintiffs' claim.

First, we repeat that payments from an able MARS are compelled by law. If the state assumed the availability of resources whose application to the needs of the family were not required by law, that would present a different case. Here the MARS is under a legal obligation to support the children. Welf. & Inst. Code, § 11351. We are reluctant to prohibit the state from operating on the assumption that the law has been complied with. Nor are we in a posi-

---

7. tenBroek, California's Dual System of Family Law (III), 17 Stan.L.Rev. 614, 617–19 (1965).

8. Lewis & Levy, *supra*, note 6, at 779–80.

9. *Id.* at 776.

tion to deny to the state a logical method for encouraging compliance with the law. As one authority has observed, the practice of budgetary modification was adopted not so much to measure contributions actually being made as to see to it that contributions were made.[10]

Second, we conclude that even if the available deductions have been too narrowly drawn to suit the preferences or style of life of some MARS, the effort to enlarge these categories must be directed to the legislature, not the courts. The days are over when the due process clause may be used to strike down state laws thought "unwise, improvident, or out of harmony with a particular school of thought". Williamson v. Lee Optical Co., 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955). We admit that the assumption of available resources will accurately reflect the facts for one particular family but not for another. Similarly, however, the restriction of certain optical practices to licensed ophthalmologists or optometrists will accurately reflect the ability of one particular unlicensed person but not of another. Williamson, *supra*. Again, permitting only practicing lawyers in the state to engage in "debt adjusting" may accurately reflect the abuse that would otherwise be imposed on distressed debtors by one particular nonlawyer, but not by another. Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). In light of these Supreme Court decisions upholding irreversible determinations as to the undesirability of allowing unlicensed persons and nonlawyers to engage in certain activities, this court must uphold over due process objections, California's irreversible determination that a MARS' net income, as computed by the state, is available to ∴ FDC recipients.

## V

### RIGHT OF PRIVACY

Plaintiffs' final contention is that enforcement of the state's budge-tary rules violates a MARS' right of privacy. We agree that the state's program may intrude into the private life of the MARS to determine whether he is maintaining an intimate relationship with the mother and to ascertain his financial status. We also agree that the "notions of privacy surrounding the marriage relationship" protect that relationship from certain intrusions. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Nevertheless, plaintiffs have failed to demonstrate that the practices of the state would be shown at trial to resemble the methods necessary to prove use of contraceptives, which methods were firmly rejected as "repulsive" by the Supreme Court. Proof of an intimate relationship, as required by the California regulations, is a far different matter, and does not require nearly so extensive or detailed an inquiry into the practices of the man and woman. California's regulations therefore fall without the "zone of privacy" recognized in *Griswold* and are not unconstitutional. What we have just said about the inquiry into "intimate relationship" applies a fortiori to the inquiry into the MARS' finances, an inquiry little different from that required for the enforcement of federal and state taxation. This fourth contention of plaintiffs must therefore fail.

## VI

California's budgetary rules obligate a man assuming the role of spouse to contribute his income, to the extent that he is able, to an otherwise needy AFDC family. To the extent of the MARS' administratively determined ability, the grant to the AFDC family is reduced. Although this practice conflicts with a recent HEW regulation requiring proof of actual contributions, we sustain it because we find the HEW regulation to be inconsistent with the language and policy of the Social Security Act, an unfounded intrusion into a province reserved by the Act and its legislative his-

10. tenBroek, *supra*, note 7, at 657.

tory for the states, and therefore invalid. We further find that California's practice is not prohibited by the equal protection or due process clauses of the constitution, or by the right to privacy announced in Griswold v. Connecticut. We therefore find that plaintiffs have not, under color of any state statute, been deprived of any rights secured by the constitution, and that this complaint seeking relief under 42 U.S.C. § 1983 must be dismissed for failure to state a claim upon which relief can be granted. The motions to intervene having been granted, this dismissal is effective as to both the original plaintiffs and the subsequent intervenors.

The dismissal of the complaint renders unnecessary consideration of any of plaintiffs' motions for relief.

In view of the disposition of plaintiffs' claims, this three-judge court is hereby dissolved.