LEWIS ET AL. *v.* MARTIN, DIRECTOR, CALIFOR-
NIA DEPARTMENT OF SOCIAL
WELFARE, ET AL.

No. 829.   Argued March 3–4, 1970—Decided April 20, 1970

*Anthony G. Amsterdam* argued the cause for appellants. On the brief were *Rubin Tepper, Steven J. Antler,* and *Peter Sitkin.*

*Jay S. Linderman,* Deputy Attorney General of California, argued the cause for appellees. With him on the brief were *Thomas C. Lynch,* Attorney General, and *Elizabeth Palmer,* Deputy Attorney General.

*Francis X. Beytagh, Jr.,* argued the cause for the United States as *amicus curiae* urging reversal. On the brief were *Solicitor General Griswold, Assistant Attorney General Ruckelshaus, Lawrence G. Wallace,* and *Alan S. Rosenthal. Martin Garbus* and *Carl Rachlin* filed a brief for the Center on Social Welfare Policy & Law et al. as *amici curiae* urging reversal.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Appellants are mothers and children who receive welfare assistance under California law.[1] At the time these actions were commenced, California law provided[2] that

---

[1] Some of the appellants sue on behalf of themselves, their children, a man assuming the role of spouse (MARS), and all others similarly situated. There are also intervenors who represent two families, one with a stepfather and another with a MARS.

[2] Cal. Welf. & Inst'ns Code § 11351 (1966).

On September 3, 1969, the Governor of California signed into law a new § 11351.5 of the California Welfare and Institutions Code, which became effective November 10, 1969. It leaves unchanged § 11351 and implementing regulations insofar as they apply to a stepfather, but repeals the old § 11351 insofar as it applied to "an adult male person assuming the role of spouse." Under the new law, a MARS "shall be required to make a financial contribution to the family which shall not be less than it would cost him to provide himself with an independent living arrangement." The new law also provides that, under regulations to be promulgated by the State Welfare Department, the MARS and the mother will be required to present the Department with "all of the facts in connection with the sharing of expenses . . . ."

payments to a "needy child" who "lives with his mother and a stepfather or an adult male person assuming the role of spouse to the mother although not legally married to her"—known in the vernacular as a MARS—shall be computed after consideration is given to the income of the stepfather or MARS.[3] The California law conclusively presumes that the needs of the children are reduced by the amount of income available from the man in the house whether or not it is in fact available or actually used to meet the needs of the dependent children.

Following our decision in *King* v. *Smith,* 392 U. S. 309, the Department of Health, Education, and Welfare (HEW) promulgated a regulation reaffirming its earlier rulings that the income of a man not ceremonially married to the mother of the dependent children may not be treated as available to the children unless there is proof that he has made actual contributions.[4] Even where the man is ceremonially married to the mother but is not the real or adoptive father, his income may not be treated as available to the children unless he is legally obligated to support the children by state law.[5]

These suits by appellants were brought in a three-judge District Court to have the California law and regulations declared invalid. That court dismissed the

---

[3] The California regulations that governed a MARS at the time these suits were brought were Cal. State Dept. of Social Welfare, Public Social Services Manual §§ 42–535 (effective Nov. 1, 1967), 44–133.5 (effective July 1, 1967). As to a stepfather, the pertinent regulations were *id.* §§ 42–531 (effective Nov. 1, 1967), 44–113.242 (effective July 1, 1967).

For criminal sanctions against a natural father who fails to support his children see Cal. Penal Code § 270; Cal. Welf. & Inst'ns Code §§ 11476–11477 (1966).

[4] 45 CFR § 203.1.

[5] *Id.,* § 203.1 (a).

complaints, holding the HEW regulations were invalid. 312 F. Supp. 197. The cases are here on appeal and we noted probable jurisdiction. 396 U. S. 900.

The Social Security Act defines a dependent child as a "needy child . . . who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with" a specified relative. § 406 (a), 49 Stat. 629, 42 U. S. C. § 606 (a). This is the Aid to Families With Dependent Children (AFDC) program which we discussed in *King* v. *Smith.*

The federal statute provides that state agencies administering AFDC plans "shall, in determining need [of an eligible child], take into consideration any other income and resources [of the child] . . . as well as any expenses reasonably attributable to the earning of any such income." 42 U. S. C. § 602 (a)(7) (1964 ed., Supp. IV).

This directive was implemented by a regulation of HEW, effective July 1, 1967, which, as then worded, provided in part:

> "[O]nly income and resources that are, in fact, available to an applicant or recipient for current use on a regular basis will be taken into consideration in determining need and the amount of payment." [6]

We stated in *King* v. *Smith, supra,* at 319 n. 16, that those regulations "clearly comport with" the Act. And as we have noted, shortly after *King* v. *Smith,* HEW

---

[6] HEW Handbook of Public Assistance Administration, pt. IV, § 3131.7. In its present form the regulation provides:

"(ii) . . . in establishing financial eligibility and the amount of the assistance payment: . . . (c) only such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered." 45 CFR § 233.20 (a)(3)(ii), 34 Fed. Reg. 1395.

promulgated a new regulation[7] which provided in pertinent part:

"(a) A State plan for aid and services to needy families with children . . . must provide that the determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent . . . will be made only in relation to the child's natural or adoptive parent, or in relation to a child's stepparent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children.

"(b) The inclusion in the family, or the presence in the home, of a 'substitute parent' or 'man-in-the-house' or any individual other than one described in paragraph (a) of this section is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State. . . . [I]n the consideration of all income and resources in establishing financial eligibility and the amount of the assistance payment, *only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in paragraph (a) of this section will be considered available for children in the household in absence of proof of actual contributions.*" (Emphasis added.)

In other words, the regulations explicitly negate the idea that in determining a child's needs, a stepfather (*i. e.,* a man married to a child's mother but who has not

---

[7] 45 CFR § 203.1.

adopted the child and is not legally obligated to support the child under state law) or a MARS may be presumed to be providing support.[8]

We said in *King* v. *Smith* that AFDC aid can be granted "only if 'a parent' of the needy child is continually absent from the home." 392 U. S., at 313. If the stepfather or MARS is a "parent" within the meaning of the federal Act, any federal matching assistance under the AFDC program for children living with a MARS or stepfather would not be available to appellants. The three-judge court said that "[t]he HEW regulation, by requiring proof of actual contributions from a MARS, reduces the expectation of Congress to a mere hope." 312 F. Supp., at 202. We disagree. We traversed the entire spectrum of that question in *King* v. *Smith,* and find it unnecessary to restate the legislative history of the relevant statutes. We concluded that Congress "intended the term 'parent' in § 406 (a) of the Act . . . to include only those persons with a legal duty of support." 392 U. S., at 327. And we went on to say:

> "It is clear, as we have noted, that Congress expected 'breadwinners' who secured employment

---

[8] An exception is a person whose presence is deemed essential to the well-being of the recipient of assistance and who is included in the family budget unit for calculation of need. See 42 U. S. C. § 602 (a)(7) (1964 ed., Supp. IV) which provides:

"A State plan . . . must . . . provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income . . . ."

The so-called AFDC "essential person" is also covered by regulation. See 45 CFR § 233.20 (a)(2)(vi), 34 Fed. Reg. 1394.

would support their children. This congressional expectation is most reasonably explained on the basis that the kind of breadwinner Congress had in mind was one who was legally obligated to support his children. We think it beyond reason to believe that Congress would have considered that providing employment for the paramour of a deserted mother would benefit the mother's children whom he was not obligated to support.

"By a parity of reasoning, we think that Congress must have intended that the children in such a situation remain eligible for AFDC assistance notwithstanding their mother's impropriety." *Id.*, at 329.

That reasoning led us to invalidate Alabama's "substitute father" regulation.[9] Like reasoning leads us to hold, contrary to the three-judge District Court, that the HEW regulation is valid. We only add that HEW might reasonably conclude that only he who is as near as a real or adoptive father would be has that consensual relation to the family which makes it reliably certain that his income is actually available for support of the children in the household. HEW may, in other words, reasonably conclude that an obligation to support under

---

[9] "Under the Alabama regulation, an 'able-bodied man, married or single, is considered a substitute father of *all the children of the applicant* . . . mother' in three different situations: (1) if 'he lives in the home with the child's natural or adoptive mother for the purpose of cohabitation'; or (2) if 'he visits [the home] frequently for the purpose of cohabiting with the child's natural or adoptive mother'; or (3) if 'he does not frequent the home but cohabits with the child's natural or adoptive mother elsewhere.' Whether the substitute father is actually the father of the children is irrelevant. It is also irrelevant whether he is legally obligated to support the children, and whether he does in fact contribute to their support. What is determinative is simply whether he 'cohabits' with the mother." 392 U. S., at 313–314.

state law must be of "general applicability" to make that obligation in reality a solid assumption on which estimates of funds actually available to children on a regular basis may be calculated.

Any lesser duty of support might merely be a device for lowering welfare benefits without guaranteeing that the child would regularly receive the income on which the reduction is based, that is to say, it would not approximate the obligation to support placed on and normally assumed by natural or adoptive parents. That reading of the Act and of *King* v. *Smith* certainly cannot be said to be impermissible.

Our decision in *King* v. *Smith* held only that a legal obligation to support was a necessary condition for qualification as a "parent"; it did not also suggest that it would always be a sufficient condition. We find nothing in this regulation to suggest inconsistency with the Act's basic purpose of providing aid to "needy" children, except where there is a "breadwinner" in the house who can be expected to provide such aid himself. HEW, the agency charged with administering the Act, has apparently concluded that as a matter of current, practical realities, the relationship of the MARS to the home is less stable than that of the stepfather who at least has the additional tie of the ceremonial marriage, and that the likelihood of the MARS' contributing his income to the children—even if legally obligated to do so—is sufficiently uncertain in the absence of the marriage tie, to prevent viewing him as a "breadwinner" unless the bread is actually set on the table. Nothing in this record shows that this administrative judgment does not correspond to the facts. We give HEW the deference due the agency charged with the administration of the Act, see, *e. g., Red Lion Broadcasting Co., Inc.* v. *FCC*, 395 U. S. 367, 381; *Zemel* v. *Rusk*, 381 U. S. 1, 11–12. In the absence of proof of actual con-

tribution, California may not consider the child's "resources" to include either the income of a nonadopting stepfather who is not legally obligated to support the child as is a natural parent, or the income of a MARS—whatever the nature of his obligation to support.

California on remand is foreclosed from arguing that its assumption-of-income provisions are consistent with the Act as applied to MARS; the State is limited to demonstrating that those provisions may be retained under the Act as applied to nonadopting stepfathers by showing that the legal obligation placed on such stepparents is consistent with the obligation required by the federal regulation.

Whether in that posture of the case California's laws and regulations are inconsistent with the federal standard is a question that the District Court did not reach. The case is therefore reversed and remanded so that such an adjudication can be made.

*It is so ordered.*

MR. JUSTICE BLACK, with whom THE CHIEF JUSTICE joins, dissenting.

In my dissenting opinion in *Rosado v. Wyman, ante,* at 430–433, I pointed out that in many lawsuits brought against state welfare authorities by recipients of Aid to Families With Dependent Children (AFDC) the real controversy is not between the AFDC recipients and the State but between the Federal Government and the state government. This case presents precisely that situation. The Solicitor General has informed the Court that the Department of Health, Education, and Welfare (HEW)—the federal agency vested by statute with the duty of insuring that States which receive federal AFDC matching funds abide by the federal requirements—has determined that § 11351 of the California Welfare and Institutions Code is inconsistent

with federal AFDC regulations, 45 CFR § 203.1. This California statute provided when this suit was brought that the income of a stepfather or a man assuming the role of a spouse (MARS) to the mother of dependent, needy children shall be considered as available to the children in computing the AFDC assistance to which the children are entitled. The federal regulations, however, in general refuse to assume that the income of a stepfather or MARS is available to the children in the absence of proof of actual contributions. California admits that there is a conflict between these state and federal provisions but contends that the federal regulations are inconsistent with the requirements of the Social Security Act and that its statute is consistent with the Act. The controversy between these two governments is thus real and substantial. It was for exactly such situations that the Social Security Act provided a comprehensive remedial scheme for resolving disputes between federal and state governments. See 42 U. S. C. §§ 602, 604, 1316 (1964 ed. and Supp. IV). Under this scheme HEW has the power, subject to certain notice and hearing requirements, to terminate AFDC assistance to a State that refuses to conform to the federal policies. In this case, the termination of federal AFDC assistance to California or the credible threat to terminate that assistance in the near future would compel a resolution of the underlying issue in this lawsuit by forcing California (1) to amend its laws to conform to the existing federal regulations, (2) to challenge HEW's determination of nonconformity in the federal courts as provided in 42 U. S. C. § 1316 (1964 ed., Supp. IV), or (3) to withdraw from the federally assisted AFDC program. Generally, the Act provides procedures that allow the state and federal governments to resolve their difference either by agreement or by lawsuit. As I stated in my dissent in *Rosado* v. *Wyman, supra,* at 434–435,

if the congressional objective in establishing the Act's remedial procedures is to be realized it is imperative that the integrity of these procedures not be undermined by premature lawsuits brought by welfare recipients. I think these remedial provisions of the Social Security Act reflect an unmistakable intent to give HEW primary jurisdiction over technical and difficult welfare issues and that these procedures should be the exclusive ones until they have been exhausted. Accordingly, in my view it was error for the District Court to assume jurisdiction and decide this case. It is strange indeed to me that the Federal Government has never been made a party to this lawsuit although its interests are deeply involved.

I would add this note of caution, however. The Federal Government has no power under our Constitution to force or coerce a State into disobeying its own valid laws while those laws are still on the books. My concern in this regard arises from my belief that a State, absent some express constitutional prohibition, has power and authority to fix and determine the property relationships and support obligations among persons within its boundaries. I certainly hope that the opinion of the Court today will not be interpreted as compelling a State to violate its own valid laws in order to obtain money from the Federal Government.

When this action was brought challenging the California statute as inconsistent with the federal regulations, HEW was in the process of considering the effect of its new regulations on the California statute. It is now clear that HEW was preparing to rule that the California provision was inconsistent with the federal requirements. If this Court today would vacate the judgment of the District Court, that order would leave HEW free to proceed to settle its controversy with California as Congress has provided. For this reason, and

for those stated above, I would vacate the judgment of the District Court and order that the case be dismissed as prematurely brought.

Mr. Chief Justice Burger, dissenting.

Unlike *Dandridge* v. *Williams, ante,* p. 471, the administrative procedures provided by statute have not been exhausted here. For this reason HEW's primary jurisdiction remains a bar to the jurisdiction of federal courts over suits brought by welfare recipients. See *Rosado* v. *Wyman, ante,* p. 430 (dissenting opinion of Mr. Justice Black). I therefore join the dissent filed by Mr. Justice Black.