STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ANN DAGOSTARO, DEFENDANT-APPELLANT.

Argued April 27, 1971—Decided June 28, 1971.

458

Mr. *Richard A. Walsh,* First Deputy Public Defender, argued the cause for defendant-appellant (Mr. *Stanley C. Van Ness,* Public Defender, attorney; Mr. *Walsh,* of counsel and on the brief).

Mr. *Elson P. Kendall,* Assistant Prosecutor, argued the cause for plaintiff-respondent (Mr. *Karl Asch,* Union County Prosecutor, attorney).

PER CURIAM.    Defendant was convicted in the Union County Court in February 1968 for violating *N. J. S. A.* 2A:111–3, which makes it a misdemeanor to obtain financial or other assistance in any form for himself or for any other person from any agency of the State or from any county or municipality, or any agency of such county or municipality "by concealing or failing to disclose a material fact which it is his duty to reveal * * *." The indictment charged that between February 1, 1963 and October 1, 1965, defendant "knowingly and designedly did obtain for herself and her children, money in the amount of $6,829.00, from the Union County Welfare Board, by means of concealing a material

fact, which it was her duty to reveal and would have affected the amount of her welfare allotment, to wit, that a male adult was residing in the family home \* \* \*."

The sentence was a suspended indeterminate reformatory term, five years probation and a direction to make restitution in an amount to be arrived at by the probation office. The Appellate Division affirmed the conviction in an unreported opinion, but vacated the provision for restitution on the ground that no attempt had been made at the trial to establish the amount of welfare payments improperly received. The amount was a separate factual issue upon which the state had the burden, and consequently it was improper to allow the amount to be unilaterally computed later by an outside agency. We granted defendant's petition for certification. 58 *N. J.* 21 (1971).

We think the conviction cannot stand because the state's case at trial was presented on a legal theory since held to be invalid by the United States Supreme Court in *King v. Smith,* 392 *U. S.* 309, 88 *S. Ct.* 2128, 20 *L. Ed.* 2d 1118 (1968), and *Lewis v. Martin,* 397 *U. S.* 552, 90 *S. Ct.* 1282, 25 *L. Ed.* 2d 561 (1970), and a new theory, advanced by the state for the first time on appeal, cannot justly be applied to sustain the trial result.

Defendant was divorced. The three children of the marriage resided with her. They were not regularly supported by their father. As a consequence the family was eligible for and had been receiving, upon defendant's application, financial assistance through the Union County Welfare Board under the Aid to Families of Dependent Children categorical assistance program (AFDC). See *Motyka v. McCorkle,* 58 *N. J.* 165 (1971). In addition, defendant became the mother of an illegitimate child, who resided with her, and whose male parent was the man asserted in the indictment to be living in the family home. He fully supported this child, of which fact she informed the Welfare Board and which resulted in a reduction of the assistance paid defendant.

The prosecution's proofs were designed to show that this man, who had an income of about $12,000 a year, lived in defendant's home (which defendant and her son denied, although concededly he came to the home frequently to visit his daughter) and that defendant concealed a material fact in failing to disclose his residence in her periodic renewal applications for assistance. (There was some doubt whether the forms defendant executed in this connection made it sufficiently plain to an applicant that such information was required.) The state offered no proof that this male adult made any contribution to defendant and her family, other than for the support of his own child. She denied that he did.

A pivotal element of the state's case on the question of materiality rested upon the testimony of the Director of the Welfare Board reciting and construing the state regulations governing initial elegibility for AFDC assistance and the amount of such assistance. He testified that the income of another adult living in the house, whether or not related to the other occupants or under any obligation to support them, was to be considered in determining eligibility for and the amount of assistance, even if no contribution by such person to the family unit was in fact made. As he put it, this adult male's "income was available to the family budget if he was in that house" and had the Board known of his residence there, the family might not have been eligible for any assistance, or at least the amount would have been substantially less. This testimony was stressed in the prosecution's summation and referred to in the charge. The instructions to the jury (which were exceedingly broad and general, appear to involve matters of law which very likely were properly the subject of court determination, and can well be said to have given little concrete guidance in a quite difficult legal situation) cannot be read or understood to mean less than that the jury could convict on the basis of the Director's testimony referred to above if the other elements of the offense were established. It is plain that this evidence, in view of the

very sizeable income of the adult male, could not help but have been a vital factor in the jury's determination of guilt.

*King v. Smith, supra* (392 *U. S.* 309, 88 *S. Ct.* 2128, 20 *L. Ed.* 2d 1118) was decided about four months after the trial in this case. For present purposes, it held that a state regulation, which precludes eligibilty for AFDC benefits to needy children, otherwise eligible, when there is a "substitute father," is inconsistent with and violates the basic federal statute providing for this assistance program. Under the particular regulation there reviewed, an able-bodied man was considered the substitute father of all of the children of the applicant mother if he lives or visits the home for the purpose of cohabitation with the mother or cohabits with her elsewhere. It was irrelevant whether he is actually the father of the children; whether he is legally obligated to support them; or whether he does in fact contribute to their support. Thereafter the federal Department of Health, Education and Welfare promulgated a regulation which in effect declared *inter alia* that, in establishing financial eligibility and the amount of the AFDC assistance payment, the income of a "man in the house," not a natural or adoptive parent, may not be treated as available to the children unless there is proof that he has made actual contributions. This regulation was sustained in *Lewis v. Martin, supra* (397 *U. S.* 552, 90 *S. Ct.* 1282, 25 *L. Ed.* 2d 561). The result is that the testimony of the Welfare Board Director on the New Jersey regulation and its effect in the instant case has since been shown to have been clearly legally erroneous. The New Jersey regulation (assuming the Director's testimony was an accurate statement of it) was invalid from inception. Simple justice would require that a conviction be set aside when one of the important elements in the theory of the state's case has since been determined to have been grounded on so palpably wrong a base, at least when, as here, the case is still pending on appeal.

In view of the decisions in *King* and *Lewis,* the state, however, in an effort to sustain the conviction before the

Appellate Division, projected what amounts to a different version of the trial theory in this regard. The Appellate Division, in affirming, apparently accepted it and the same argument is made to us. While not clearly articulated, we understand it to run like this: In the course of cross-examination, the Welfare Board Director was rather casually asked about the effect on the amount of assistance granted to an eligible family unit if an ineligible individual who had no income also resided in the home. He replied that such a situation would cause some reduction in the allowance of certain items of the budget, particularly rent. The state now would apply this answer to the case at bar on the thesis that, even if the adult male here contributed none of his income to the family unit, his residence in the home, if disclosed, would have resulted in some reduction in defendant's assistance and that the fact of residence was therefore still material and sufficient to establish a case for the prosecution.

This, we think, would be quite unfair under the circumstances. The single answer referred to was not pursued further and the thesis was not mentioned either in summation or in the charge. Rather, as we have pointed out, the case was tried and went to the jury on the theory of a conclusive presumption that the male adult's substantial income was available to and used for the benefit of defendant and her three children. The jury thus decided the case on the picture of a defendant obtaining sizeable public assistance when an adult male of substantial means, and the father of defendant's fourth child, resided in the household. It is not fair to presume that they would have taken the same view and reached the same conclusion of guilt if the case had been presented on the state's new theory, which would involve only a relatively insignificant amount of improper assistance (assuming that the Director's testimony was accurate and that a regulation providing as he stated existed and was valid). Moreover, defendant might have had another or different defense and introduced additional evidence if she had known at trial that the prosecution was relying on

this thesis. It is an elementary rule, doubtless based on the considerations of fundamental justice referred to, that the theory upon which a criminal case was tried must ordinarily be strictly adhered to on appeal. 5 *Wharton's Criminal Law and Procedure* (Anderson ed. 1957), § 2253, p. 509; *People v. Johnson,* 86 *Mich.* 175, 48 *N. W.* 870, 13 *L. R. A.* 163 (1891). *Cf. State v. Butler,* 27 *N. J.* 560, 597–598 (1958); *State v. Shelbrick,* 33 *N. J. Super.* 7, 9–10 (App. Div. 1954); *State v. McCoy,* 114 *N. J. Super.* 479, 482 (App. Div. 1971). The state's new thesis advanced on appeal cannot be accepted to sustain the conviction.

It becomes unnecessary to consider defendant's other grounds urged for reversal.

The judgment of conviction is reversed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.