Mrs. Jeanne ROSEN, as Mother and Natural Guardian of Her Minor Children, Debra Setterholm and Deanna Setterholm, Individually and on Behalf of All Others Similarly Situated, Appellants,

v.

Morris HURSH, Individually and as Commissioner of Public Welfare of the Department of Public Welfare of the State of Minnesota, et al., Appellees.

No. 72–1043.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1972.

Decided July 26, 1972.

**732**

Jeffrey H. Hartje, Legal Aid Society of Minneapolis, Inc., Minneapolis, Minn., for appellants.

Judy Oakes, Asst. Atty. Gen., Warren Spannaus, Atty. Gen., Curtis D. Forslund, Sol. Gen., St. Paul, Minn., for appellees.

Before MATTHES, Chief Judge, ROSS, Circuit Judge, and URBOM, District Judge.*

\* District of Nebraska, sitting by special designation.

1. At the time this suit was instituted, Minnesota Public Welfare Manual § VII–1150 enumerated relatives who would be legally responsible for the support of children and included stepfathers within this enumeration. Section VII–224.04 contained the following provision:

> When a child defined as a dependent child under Minnesota Statutes . . . lives with his mother and stepfather, the county shall determine whether the income of the stepfather is sufficient to support the child wholly or in part.

Mrs. Rosen challenged also §§ VII–1152 and –1154, which contributed less directly to the alleged presumption that stepparent income was available for child support.

The manual was revised on May 8, 1972, after this suit had been filed and decided in the district court and appealed to this court. This revision removed stepfathers from the list of relatives respons-

MATTHES, Chief Judge.

Mrs. Jeanne Setterholm Rosen instituted this action in the district court, seeking declaratory and injunctive relief on behalf of her two children. She claimed additionally to be representative of the class of all recipients of Aid to Families with Dependent Children (AFDC) who were affected by the "stepfather" provisions of the Minnesota Public Welfare Manual.[1] Federal jurisdiction was invoked pursuant to 42 U.S. C. § 1983[2] and 28 U.S.C. § 1343(3).[3] Part of the suit was dismissed by the district court for lack of federal jurisdiction, and summary judgment was granted in favor of appellees on the remaining portion of the case. Rosen v. Hursh, 329 F.Supp. 322 (D.Minn.1971).

I

Mrs. Rosen married Delmar Setterholm, the father of the two children involved in this law suit, in 1960. She became separated from him in 1962, at which time her children were granted AFDC benefits. Setterholm's whereabouts are unknown, and he.has made no contribution to support of the children.

ible by law for the support of dependent children.

2. Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. Section 1343(3) provides for federal jurisdiction:

> [T]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

Mrs. Rosen married Bernard Rosen in 1968. The Setterholm children remained with her, but Rosen neither adopted the children nor agreed to accept legal responsibility for their support. Shortly after the marriage, the AFDC grant was reduced to reflect support supposedly provided for the children by Rosen. This reduction was appealed, and the appeal was denied. Rosen changed jobs in 1969. The following year, during the course of a re-evaluation by welfare officials of the AFDC grant to his stepchildren, Rosen refused to disclose his income. The grant subsequently was suspended, an administrative appeal again was denied, and the grant was terminated.[4] Mrs. Rosen then instituted this suit.

Mrs. Rosen's first contention is that the challenged regulations created a presumption that the income and resources of her second husband were indeed available for the support of his stepchildren. It is argued that the regulations violated rights guaranteed to the children by the Due Process Clause of the Fourteenth Amendment and also were fatally inconsistent with provisions of the Social Security Act, 42 U.S.C. § 601 et seq., and regulations promulgated thereunder, particularly 45 C.F.R. § 233.90(a).[5] Mrs. Rosen also challenged a practice whereby benefits to her children were terminated when their stepfather refused to disclose his income to welfare officials.

During the pendency of this suit, the district court in which it was docketed dismissed another complaint, filed by another welfare recipient, which had challenged the presumption of income availability allegedly created by Minnesota stepfather regulations. Kostohryz v. Hursh, 329 F.Supp. 319 (D.Minn. 1971). The Kostohryz suit had not challenged the practice of terminating benefits where stepparents declined to disclose their incomes. Dismissal of that suit was based upon lack of federal jurisdiction, the court holding (1) that 42 U.S.C. § 1983, as implemented by 28 U. S.C. § 1343(3), authorized federal adjudication only of suits alleging deprivations of personal rights, as opposed to property rights, and (2) that property rights exclusively were involved in the Kostohryz complaint. The court recognized that a complete termination of welfare benefits "may deprive an eligible recipient of the very means by which to live," 329 F.Supp. at 321, and thus give rise to a federally cognizable action involving personal rights. The Kostohryz complaint, however, was held not to have risen to this level.

On the same day that Kostohryz was decided (July 7, 1971) the district court filed its opinion in this case. The court held that Kostohryz controlled the question of jurisdiction to consider Mrs. Rosen's challenge of the presumption claimed to inhere in the stepfather regulations, and this part of her complaint thus was dismissed. Jurisdiction was found, however, to consider her challenge of the termination procedure previously described, because implementation of this procedure had resulted in complete stoppage of welfare benefits, giving rise to a colorable claim of denial of a personal right. Having recognized its jurisdiction to consider this claim, the district court granted appellees' motion for summary judgment, reasoning (1) that state welfare authorities are

---

4. Rosen since has left home and his whereabouts are unknown. After his departure, a new AFDC grant was approved for Mrs. Rosen and her children.

5. The federal regulation was designated 45 C.F.R. § 203.1 at the time suit was brought. Its crucial provision remains the same:
    (b) . . . [I]n the consideration of all income and resources in establishing financial responsibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in paragraph (a) of this section [natural or adoptive parent] will be considered available for children in the household in absence of proof of actual contributions.

"entitled to adopt reasonable methods for ascertaining the resources available to any child claiming AFDC eligibility [citing Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971)]" and (2) that

[i]t is not unreasonable to require a stepfather and his wife to openly and honestly make available to county welfare boards the facts of their incomes and budget, to the end that the board may fairly and accurately determine if the stepfather is actually giving voluntary support to his stepchildren.

329 F.Supp. at 324.

Both the *Kostohryz* and the *Rosen* decisions were appealed to this court. In an unpublished opinion, we reversed and remanded the *Kostohryz* case upon the basis of the recent opinion of the Supreme Court in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), which abolished the personal right—property right distinction in suits brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). We now reverse this case and remand it to the district court for further proceedings consistent with this opinion.

## II

■ The jurisdictional issue is controlled, of course, by Lynch v. Household Finance Corp., *supra.* Whether the questions sought by Mrs. Rosen to be resolved involved rights properly characterized as "personal" or as "property," they are subject to federal adjudication.

■ We note next that, despite the plain language of former § VII–1150 of the Minnesota State Welfare Manual, *supra,* n.1, there appears to be no basis in Minnesota statutory or case law for the proposition that stepparents may be held responsible for the support of children whom they have not adopted. *See* In re Besondy, 32 Minn. 385, 20 N.W. 366, 367 (Minn.1884). Appellees have conceded this point.

■ Further, any claim by appellees that the presumption challenged by Mrs. Rosen either did not inhere in its regulations or was not in conflict with the controlling federal regulation would be untenable.

The crucial portions of the regulations here challenged provided that stepparents are legally responsible for the support of children claiming entitlement to AFDC benefits and that stepparent income shall be a factor in the computation of grants by welfare authorities. We find no room to doubt that these regulations created a presumption that stepparent income, if sufficient, would be made available for the support of stepchildren.

We are unable to reconcile the presumption of availability created by the State regulation with the provisions of 45 C.F.R. § 233.90(a), formerly 45 C.F.R. § 203.1. *See* n.5, *supra.* The Supremacy Clause of the Constitution therefore requires us to find the State regulation invalid. Townsend v. Swank, 404 U.S. 282, 286, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

Our conclusion that the Minnesota regulations conflict with 42 U.S.C. § 601 et seq. and the federal regulations finds additional support in the decision of the Supreme Court in Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970). In *Lewis,* the Court struck down the stepfather provisions of the California welfare code and regulations, holding that the State had created a presumption of income availability inconsistent with the controlling federal regulations. We are able to discern no substantial distinction between the pertinent California and Minnesota regulations, and the *Lewis* decision therefore requires that the stepfather provision here in controversy be held invalid. The following rule, expounded in *Lewis,* governs this case:

In the absence of proof of actual contribution, [the State] may not consider the child's "resources" to include . . . the income of a nonadopting stepfather who is not legally obligated

to support the child as is a natural parent. . . .

397 U.S. at 559–560, 90 S.Ct. at 1286.

 We are constrained also to rule improper the State practice which resulted in termination of AFDC payments to the Rosen children as a consequence of their stepfather's refusal to disclose his income to welfare authorities. The Social Security Act provides that "aid . . . shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 602(a)(10). AFDC is one of the programs established by the Social Security Act of 1935, and is designed to provide financial assistance to needy dependent children who have been deprived of the support of one of their parents. 42 U.S.C. § 601; *see also* King v. Smith, supra. The only eligibility requirements imposed upon such children by the Act are that they be "needy" and "dependent". 42 U.S.C. § 602(a). The practice of terminating AFDC benefits to children because their stepparents, over whose behavior they exercise no control, refuse to cooperate with welfare officials imposes a condition upon AFDC eligibility which is not contemplated by the Act and which presents a significant obstacle to accomplishment of the Act's goals.

 We note finally the reliance of the district court upon Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971). As noted above, the *James* opinion was relied upon for the proposition that "a state or local welfare agency is entitled to adopt reasonable methods for ascertaining the resources available to any child claiming AFDC eligibility." 329 F.Supp. at 324. The principle is correct, of course, but the present case is to be distinguished from *James*. Although Mr. Justice Blackmun recognized that the home visit is not required by federal statute or regulation, he noted that the visit is "the heart of welfare administration;" that it affords

"a personal, rehabilitative orientation, unlike that of most federal programs;" and that the "more pronounced service orientation" effected by Congress with the 1956 amendments to the Social Security Act "gave redoubled importance to the practice of home visiting." 400 U.S. at 319, 320, 91 S.Ct. at 387. Seemingly, the crucial question in *James* was whether the State had violated the Fourth Amendment rights of a mother receiving AFDC relief by imposing home visits as a condition of continued eligibility. That issue is not in this case.

The judgment of the district court is reversed, and the cause is remanded for further proceedings consistent with this opinion.