The **FIRST BANK AND TRUST COMPANY, Plaintiff-Appellant,**

v.

**James E. SMITH, Comptroller, etc., et al., Defendants-Appellees.**

**No. 74–1263.**

United States Court of Appeals, First Circuit.

Heard Nov. 4, 1974.

Decided Jan. 3, 1975.

Michael T. Putziger, Boston, Mass., with whom Roche, Carens & DiGiacomo, Boston, Mass., was on brief for appellants.

William A. Waldron, Boston, Mass., with whom Alan L. Lefkowitz, Paul E. Clifford, and Gaston, Snow & Ely Bartlett, Boston, Mass., were on brief for Middlesex Bank, N.A., appellee.

Morton Hollander, Atty., Dept. of Justice, with whom Carl A. Hills, Asst. Atty. Gen., James N. Gabriel, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, were on brief for James E. Smith, Comptroller of the Currency of the United States, appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal requires us to review a decision by the Acting Comptroller of the Currency of the United States approving an application for permission to establish a branch bank in Chelmsford, Massachusetts. The district court, on the basis of the administrative record and an affidavit supplied by the applicant, granted summary judgment for the defendant Comptroller. Fed.R.Civ.P. 56(b). We vacate and remand for further proceedings.

Defendant-Appellee, Middlesex Bank, N.A., is a national bank operating under the provisions of 12 U.S.C. § 12 et seq. It maintains 28 branch offices in Middlesex County. Plaintiff-Appellant, The First Bank and Trust Company (First Bank) is a Massachusetts Trust Company operating as a commercial bank under M.G.L. c. 172. It has its principal office in Chelmsford, Massachusetts, and four branch offices in surrounding towns.

On December 6, 1972, Middlesex Bank filed an application with the Regional Administrator of National Banks for the First Bank Region requesting permission from the Comptroller of the Currency to establish a branch office in the Purity Supreme Shopping Center in Chelmsford, Massachusetts. Pursuant to 12 C.F.R. § 5.2(b) Middlesex Bank published legal notice of its application, and First Bank requested that a hearing on the application be held in accordance with 12 C.F.R. §§ 5.4–5.10.

Acting by designation of the Comptroller, the Regional Administrator held a public hearing, having first requested an investigation into the facts by a National Bank Examiner who rendered a written report. At the hearing Middlesex Bank presented evidence to support its application, First Bank presented opposing evidence, and several other local banks appeared in opposition. The Regional Administrator, without comment, then transmitted the file established pursuant to 12 C.F.R. § 5.3, including a transcript of the hearing, to the Comptroller who, after various levels of staff review, approved the application without stating his reasons. First Bank thereupon brought this action in the district court, 28 U.S.C. § 1331(a), challenging the Comptroller's action as violative of his statutory duty and authority and seeking declaratory and injunctive relief.

■ Appellant argues that the Comptroller failed to take into account a statutory requirement that he approve new branches for national banks only "if such establishment and operation are at the time authorized to State banks by the statute law of the State in question" and "subject to the restrictions as to location imposed by the law of the State on State banks."[1] The statute has been held to incorporate by reference state laws governing the establishment of branch banks, First National Bank v. Walker Bank & Trust Co., 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966). Its purpose is to ensure "competitive equality" so that national banks may not overwhelm and displace a state's own banks. By requiring national banks to adhere to the same restrictions on branching, Congress intended to prevent them from enjoying an unfair advantage over state banks. *Walker Bank, supra;* First National Bank v. Dickinson, 396 U.S. 122, 90 S.Ct.

337, 24 L.Ed.2d 312 (1969). In passing on each branch application, the Comptroller "is to weigh [it] against the standard imposed by the statute law of the state, and to deny the application if that standard is not met." First National Bank of Fairbanks v. Camp, 151 U.S. App.D.C. 1, 465 F.2d 586, 597 (1972), cert. denied, 409 U.S. 1124, 93 S.Ct. 936, 35 L.Ed.2d 255 (1973). The statute law of Massachusetts provides that state banks may establish branch offices only if the Board of Bank Incorporation, a state agency, finds that a city's or town's present banking facilities are "inadequate for the public convenience." M.G.L. c. 172, § 11. It is this standard, incorporated by reference in the federal legislation, which appellant contends was ignored.

■ Our review of the Comptroller's action is under the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq. Neither the National Bank Act nor the APA requires the Comptroller, before approving a branch application, to hold a hearing on the record or to make formal findings. *Cf.* Camp v. Pitts, 411 U.S. 138, 140–142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1972). Thus, the appropriate measure is simply whether the Comptroller's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The district court so recognized, stating correctly that the Comptroller was under no duty to make findings of fact, and that review was to be based on the full record before the Comptroller when he made his decision. In affirming the Comptroller's approval, the court said,

> "There may exist some confusion as to the reasoning process employed by the Comptroller in reaching his decision, but there is sufficient explanation in

---

1. 12 U.S.C. § 36(c)(2) provides that

"[a] national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: . . . at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks."

the administrative record . . . to obviate the need for further explanation . . . ."

We agree that there would be enough support in the record concerning possible inadequacy and inaccessibility of present banking facilities in Chelmsford to provide a rational basis for the Comptroller's approval.[2] But the record leaves us in doubt whether the Comptroller took Massachusetts' statutory standard into account. Under 5 U.S.C. § 706(2)(A), a reviewing court must be satisfied that the Comptroller's decision was "in accordance with law." While a decision favorable to Middlesex Bank would not be arbitrary or capricious on this record, neither would one turning down its request for a new branch. It thus becomes crucial to determine whether the relevant legal standard was applied.

At the hearing the applicant bank and its opponent made reference to the Massachusetts statutory standard, but the Comptroller's subordinates later made no reference to it in the written recommendations and reports which formed the basis of the Comptroller's action. More troublesome, it is by no means clear from the tenor of their official remarks that the materiality of the state standard was understood. Indeed, portions of certain reports suggest the contrary. For example, in response to a question in a U.S. Treasury form whether under the state's branch banking laws the applicant could legally establish a bank, federal banking officials simply answered "Yes". Given the fact that virtually all of the hearing had been devoted to whether or not applicant could qualify under state law, this response is so meager as to suggest that respondents did not grasp the nature of the legal claim.

Both sides call to our attention portions of reports indicating either that there were already too many banks in Chelmsford or, contra, that there was room for appellee. But the point is not whether there is support in the record for the Comptroller's decision—we believe there would be, assuming he applied the correct legal standard. The point is whether or not the Comptroller reviewed the facts in light of the Massachusetts statute law. Under 12 U.S.C. § 36(c)(2), the Comptroller had a duty to focus on the controlling state statute; and the contesting banks were entitled to have the application measured against this legal standard. Otherwise their arguments in opposition were an exercise in futility from the start.

We do not hold the Comptroller to any particular form of record; a conclusory statement[3] or even a subordinate's report directed to the relevant standard might have satisfied us that the appropriate legal standard had been recognized and applied. But here there is not only an absence of affirmative recognition of Massachusetts law, there are indications on the face of the record that those with the responsibility for guiding the Comptroller may not have considered it at all. We think the present record to be so deficient as to "frustrate effective judicial review." Camp v. Pitts, *supra*, 411 U.S. at 142–143, 93 S.Ct. 1241. Until the Comptroller makes it clear whether or not the applicable state standard was taken into account in rendering his decision, it cannot be determined that his approval was "in accordance with law."

It can be argued, of course, that since the Comptroller can validate his decision by a piece of paper, remand is time consuming ritualism. And it is true that

2. We find no merit in the argument that the Comptroller is bound by earlier decisions of the Massachusetts Board of Bank Incorporation refusing to permit a state bank to operate a branch in Chelmsford. The Comptroller is not bound by a state agency's interpretation of the state's statutes. First National Bank of Southaven v. Camp, 471 F.2d 1322, 1325–1326 (5th Cir. 1973); Union Savings Bank v. Saxon, 118 U.S.App.D.C. 296, 335 F.2d 718, 723 (1964).

We note further that the Massachusetts courts have held that state agency decisions concerning "inadequacy" are "political questions" and non-reviewable. First National Bank v. Board of Bank Incorporation, 280 N.E.2d 400 (Mass.1972); Natick Trust Co. v. Board of Bank Incorporation, 337 Mass. 615, 151 N.E.2d 70 (1958).

3. *Cf.* Dorszynski v. United States, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974).

the Comptroller's good faith representation of compliance will effectively end judicial review. But were we to affirm on the present record, we would abdicate a judicial responsibility; and we will not assume that a senior administrative official such as the Comptroller will take the easy course of certifying that he considered the state standard if such were not the case. Moreover, we assume that to avoid this problem in future cases, administrative action will be taken to ensure that the requisite consideration of state statute law can be determined from the record.

We vacate and remand for the district court to determine from the Comptroller, following the limited procedures outlined in Camp v. Pitts, *supra*, 411 U.S. at 142–143, 93 S.Ct. 1241, whether or not the Comptroller took into account the relevant state legal standard. If such was the case, his approval of the application should be sustained. If it should appear that this standard was not taken into account, the district court shall conduct such further proceedings and enter such orders as it deems appropriate.

Remanded for proceedings in accordance herewith.