619 F.2d 134
 Edward KOLLETT, by his next friend, Constance Gomes,
Plaintiff, Appellee,
v.
Patricia Roberts HARRIS, as Secretary of Health, Education
and Welfare, Defendant, Appellant.
Frances MARDEROSIAN, o/b/o Peter Marderosian, Plaintiff, Appellee,
v.
Patricia Roberts HARRIS, as Secretary of Health, Education
and Welfare, Defendant, Appellant.
 Nos. 79-1453, 79-1455.
 United States Court of Appeals,
First Circuit.
 Argued Jan. 10, 1980.
Decided April 18, 1980.
 
 Bruce G. Forrest, Atty., Dept. of Justice, Washington, D. C., with whom Alice Daniel, Acting Asst. Atty. Gen., Washington, D. C., Paul F. Murray, U. S. Atty., Providence, R. I., and Ronald R. Glancz, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellant.
 William Rutzick, Providence, R. I., with whom Barbara Hurst, Providence, R. I., and Gary Powers, Woonsocket, R. I., were on brief, for appellees.
 Before ALDRICH, CAMPBELL and BOWNES, Circuit Judges.
 LEVIN H. CAMPBELL, Circuit Judge.
 
 
 1
 Plaintiffs are disabled children who are eligible for cash assistance payments under the Supplemental Security Income (SSI) program, 42 U.S.C. §§ 1381 et seq. Believing the benefits allowed them by the Secretary were lower than those to which they were entitled, plaintiffs appealed the Secretary's final decisions to the district court pursuant to 42 U.S.C. § 405(g). The Secretary's present appeals to us are from the district court's judgments in those cases.
 
 
 2
 This dispute over benefits arises from plaintiffs' discontent with the Secretary's regulations attributing to a disabled child certain income of his parents or stepparents whether or not that income is actually available to the child. As an individual's benefit level is tied to his income and resources, augmentation of a child's income by the "deemed" or attributed parental income reduces the amount of SSI benefits the child receives. In the court below, plaintiffs challenged both the procedural and substantive validity of the Secretary's deeming regulations. The district court concluded the regulations were invalid and ordered a new rulemaking.
 
 
 3
 I. The regulations and the district court opinion.
 
 
 4
 The challenged regulations implement 42 U.S.C. § 1382c(f)(2), which provides,
 
 
 5
 "For purposes of determining eligibility for and the amount of benefits for any individual who is a child under age 21, such individual's income and resources shall be deemed to include any income and resources of a parent of such individual (or the spouse of such a parent) who is living in the same household as such individual, whether or not available to such individual, except to the extent determined by the Secretary to be inequitable under the circumstances."
 
 
 6
 The Secretary's first set of interim regulations to implement section 1382c(f) (2) was published in the federal register on January 22, 1974. 39 Fed.Reg. 2487. These regulations went into immediate effect and were to be applied by the Secretary in administering the SSI program from its effective date, January 1, 1974,[1] until the adoption of final regulations. Generally, the regulations provided that all income of a parent or stepparent living with the child would be treated as the child's income with three main exceptions. Deductions were made for (1) the work expenses of the parent or stepparent ("expenses attributable to the earning of . . . income"), (2) the living expenses of the parent and/or stepparent, and (3) the living expenses of other children in the same household. 39 Fed.Reg. 2487, § 416.1185. These deductions were set amounts; determinations to meet individualized circumstances were not made. Thus, for example, a disabled child was not allowed to show that the regulatory figures were insufficient to cover his parents' living or work expenses and therefore income which was not actually available to him was deemed to him. Amendments to the interim regulations were published on January 18, 1977 with an immediate effective date. 42 Fed.Reg. 3316. The amendments liberalized the deeming rules in certain respects. 42 Fed.Reg. 3316. Final regulations for deeming, substantially the same as the 1977 regulations, were published on September 6, 1978. 43 Fed.Reg. 39564; 20 C.F.R. § 416.1185.
 
 
 7
 Plaintiffs Kollett and Marderosian argued before the district court that the amounts of the various exclusions under both the interim and final regulations were arbitrary and inadequate, and plaintiff Kollett, in addition, challenged the Secretary's deeming to him the income of his stepfather who, under state law, was not obligated to support him.[2]
 
 
 8
 The district court first addressed the constitutionality of deeming to a child income not actually available to him. The court observed that but for the clause "except to the extent determined by the Secretary to be inequitable under the circumstances," 42 U.S.C. § 1382c(f)(2) would conclusively presume that a child's needs were reduced by the amount of the stepparent's or parent's income. Believing this presumption might be so irrational as to be unconstitutional, at least with respect to a child whose stepparent had no legally enforceable support obligation, the court construed the statute to avoid this presumed constitutional problem. Consequently, the court interpreted section 1382c(f)(2) as delegating to the Secretary "the power to exempt from the deeming provision income of a parent or stepparent without restriction as to whether or not it is actually available, but guided by the standard of equity." "So long as the Secretary appropriately exercises his power in this manner," the court stated, "the statute is constitutional."
 
 
 9
 The court then proceeded to determine whether the deeming regulations were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The court concluded that the regulations, both interim and final, were invalid because the Secretary had failed to give consideration to all "relevant factors" under the standard of Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The court reasoned as follows:
 
 
 10
 "(O)nce (the Secretary) undertook to exercise his statutory authority, the Secretary was under an obligation to do so in accordance with the statutory standard. Consequently, the Secretary's action must be measured against the standard of equity under the circumstances.
 
 
 11
 "Equity . . . is a term which admits of no precise definition, and . . . such a standard provides the Secretary with a considerable degree of discretion. The ultimate determination whether it is inequitable to deem income, given a particular set of circumstances, is within the Secretary's discretion. However, it is clear that there are limits to this discretion. . . . There must be some indication that consideration has been given to whether deeming is equitable under the various circumstances; a decision cannot conceivably be equitable unless all the relevant factors are considered."
 
 
 12
 The court then proceeded to enumerate the factors which it felt were relevant. The court stated,
 
 
 13
 "There can be little question . . . that because a relevant factor is whether it is equitable to deem income which is not actually available, a relevant factor in formulating regulations under section (1382c(f)(2)) is whether income of a stepparent not obligated to support a stepchild should be deemed to the stepchild when that income is not actually available. The Secretary's failure to consider such a clearly relevant factor constitutes an abuse of his discretion and alone justifies this court in setting aside the challenged regulations."
 
 
 14
 The court next turned to the various exceptions from deeming. It found the parental living allowance exception, set at an amount equal to the maximum federal SSI benefit, arbitrary. The court stated,
 
 
 15
 "(O)nce (the Secretary) recognized the specific inequity of not excepting from deeming an amount 'which would be considered necessary to meet the living needs of the person who has the income and resources,' he was under a duty to select an amount that is not arbitrary and capricious by considering the factors relevant to a determination of an individual's living needs. . . . There is no question that the amount of income generated by the basic federal SSI rate is wholly inadequate as a measure of individual living expenses."
 
 
 16
 Because persons receiving SSI do not necessarily live on those benefits alone but may also receive state supplements to SSI, medicaid, and food stamps, the court concluded that the value of these supplementations should be considered in calculating the parental living allowance exception.
 
 
 17
 The court found similar deficiencies with respect to the exclusion for the living expenses of the other children living in the same household the figure set by the regulations failed "to reflect any consideration of regional variations in the cost of living, of the cost of medical care, or of the cost of paying full price for food rather than utilizing food stamps."
 
 
 18
 The work expense exclusion of the 1974 proposed regulations, set at $65, was also held invalid. (Plaintiffs did not challenge the validity of the 1977 or current work expense formula.) Because there was no indication that the $65 figure "was based on either an examination of actual work expenses or adoption of a congressionally determined amount," the court concluded the $65 figure was "arbitrary, capricious, (and) an abuse of discretion."
 
 
 19
 The court ordered the Secretary to consider factors it had enumerated in a new rule-making procedure and to apply the subsequent rules retroactively to plaintiffs.
 
 
 20
 II. The challenges to the statute and regulations.
 
 
 21
 Plaintiffs' so far successful challenge to the Secretary's program in this area has three principal lines of attack. They argue (1) 42 U.S.C. § 1382c(f) (2), (and, concomitantly, the deeming regulation adopted thereunder), is unconstitutional insofar as it is construed to permit the Secretary to deem to a stepchild income of a stepparent which is not actually available to the child; (2) the deeming regulations are, in any event, arbitrary and capricious because the Secretary did not consider all relevant factors in promulgating them; and (3) the regulations are invalid because not adopted in accordance with the notice and comment procedure required by 5 U.S.C. § 553. We consider each issue in turn.
 
 
 22
 A. Constitutionality of deeming income of a stepparent to the child in these circumstances.
 
 
 23
 Plaintiff Kollett argues and the district court expressed some if not complete agreement that unless 42 U.S.C. § 1382c(f)(2) were interpreted to require the Secretary to exclude from deeming that income of a stepparent not actually available to the disabled child, the statute would be unconstitutional. If the statute is not so interpreted, plaintiff contends, it violates due process by creating an irrebuttable or conclusive presumption that the child's needs were reduced by the amount of the stepparent's or parent's income, and violates the equal protection component of the due process requirement of the fifth amendment by treating disabled children living in households with persons other than stepparents who are not obligated to support them differently from disabled children living with stepparents who are not obligated to support them.[3]
 
 
 24
 Unlike the district court, we do not believe the law would be unconstitutional if construed to permit funds to be attributed to a stepchild which might actually, in certain cases, not be available to him or her. To the extent Boucher v. Minter, 349 F.Supp. 1240 (D.Mass.1972), is to the contrary, we are not persuaded to follow it. A legislative classification in the social welfare field does not offend the due process clause unless "the statute manifests a patently arbitrary classification, utterly lacking in rational justification." Weinberger v. Salfi, 422 U.S. 749, 768, 95 S.Ct. 2457, 2468, 45 L.Ed.2d 522 (1975) quoting from Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). Several rational objectives may be perceived as being furthered by the deeming of a stepparent's income to a stepchild. Congress, in its distribution of finite resources, could rationally conclude that a disabled child living in a family unit consisting of himself, siblings, natural parent, and wage earner stepparent should ordinarily be treated the same under the SSI program as a disabled child living in a unit where the wage earners were natural parents. Because the expenses and financial needs of the two households would likely be the same, as would the most probable allocation of resources among the family members, Congress could permissibly conclude that no general exception from deeming should be made where the source of family financial support is a stepparent rather than a natural parent. Second, as was observed in the legislative history of the proposed 1972 amendments, failure to deem the income and resources of a stepparent "might easily lead to abuses of the system" because of the difficulties of proving whether a stepfather living in the same household with the disabled child is contributing to the support if he alleges he is not.[4] H.R.Rep.No. 92-231, 92d Cong., 2d Sess., reprinted in (1972) U.S. Code Cong. & Admin. News pp. 4989, 5171. Congress could conclude that ordinarily a stepparent living with a stepchild does and will support the child, even though legally not required to do so, and therefore the child is not likely to be in need of public assistance. That hardship may result in those presumably few instances where support is not forthcoming does not constitutionally preclude Congress from adopting a statutory rule designed to fit the generality of cases. Weinberger v. Salfi, 422 U.S. 749, 777-85, 95 S.Ct. 2457, 2472-76, 45 L.Ed.2d 522 (1975).
 
 
 25
 Nor does the difference in treatment between disabled children living with persons other than parents or stepparents, and disabled children living with their parents or stepparents, violate equal protection. Income of a person with whom a disabled child lives (other than a parent or stepparent) which is not actually available to the child is not attributed to him, although if he does receive support and maintenance in kind from said other person his benefits are reduced by one-third. 42 U.S.C. § 1382(a)(2)(A). In announcement of the final deeming regulations, the Secretary traced the deeming concept to "the long social and legislative history" reflecting the parents' responsibility to support their children. 43 Fed.Reg. 39565 (Sept. 6, 1978). This traditional responsibility accords a rational basis to Congress' decision to deem the income of a parent but not, for example, that of an aunt or uncle. While a stepparent, unlike a parent, historically has not been legally obligated to support a stepchild, the inclusion in the general "parent" category of a stepparent who is living in the same household is rational in terms of societal expectations, and could reasonably be considered necessary to avoid a federal loophole which might lead to the abuse of the system, as outlined in the legislative history. Congress could rationally conclude that a person who is married to the child's natural parent, living in the same household, and thus, in a sense, occupying the position of the child's other parent, is likely to be supporting the child and that such an assumption is less likely to accord with reality in the case of a person other than a parent or stepparent who is living in the same household as the child. As the legislative classification in question reflects hypotheses which we cannot say are irrational, equal protection is not violated. Thus we believe that neither the statute nor the deeming regulation promulgated thereunder is unconstitutional insofar as construed to provide that income of a stepparent living in the same household as a disabled stepchild is deemed to the child.
 
 
 26
 B. The deeming regulations reflect a consideration of relevant factors and are not arbitrary or capricious.
 
 
 27
 In agreeing with plaintiffs that the deeming regulations were invalid under the "arbitrary-capricious standard" of 5 U.S.C. § 706(2)(A), the district court ruled they were promulgated without consideration of all "relevant factors." This touchstone was drawn from Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), where the Supreme Court said that, in order to make a finding whether an agency's actual choice was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," a reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Id., 416, 91 S.Ct. 823-824. We do not, however, read this language as directing a court to set aside duly promulgated regulations, and order a new rulemaking, every time the administrative record does not affirmatively show whether the agency specifically addressed some particular factor which a court later feels is not irrelevant.[5] Compare Commodity Futures Trading Commission v. Hunt, 591 F.2d 1211, 1217 (7th Cir. 1979) (relevant factor requirement is not a device by which parties can thwart enforcement by offering new evidence challenging wisdom of regulation). Since, under 5 U.S.C. § 553(c), an agency is required only "(to) incorporate in the rules adopted a concise general statement of their basis and purpose," not to enumerate every conceivable factor that entered the decision-making process, it is not always possible for a court to determine what consideration a particular factor received.[6] As a leading commentator suggests, if the administrative record indicates the agency considered at least the major factors, failure specifically to address less salient points would seem an insufficient reason to set aside the rules.[7] Davis, Administrative Law of the Seventies 666 (1976). We are satisfied from the administrative record before us that the Secretary gave sufficient attention to a wide range of issues including the general type of matters mentioned by the district court so that the regulations promulgated cannot be invalidated for failure to consider relevant factors.
 
 
 28
 The district court's opinion that the Secretary had failed to consider all the relevant factors in promulgating the deeming regulations stems, in the first instance, from its conclusion that the Secretary had misinterpreted the scope of authority delegated by 42 U.S.C. § 1382c(f)(2). In the January 18, 1977 announcement of the amended interim deeming regulation, the Secretary specifically rejected a proposal to limit deeming just to that income actually made available to a disabled child. The Secretary stated
 
 
 29
 "(C)omments were made that only the income actually available to the eligible (disabled) individual should be deemed. This concept is not consistent with the legislative language in (42 U.S.C. § 1382c(f)) which requires that the income of an ineligible (i. e., not disabled) spouse, parent, and spouse of parent should be deemed to the eligible individual whether or not the income is actually available to the eligible individual." (Emphasis added.)
 
 
 30
 42 Fed.Reg. 3317 (Jan. 18, 1977). See also 43 Fed.Reg. 39566 (Sept. 6, 1978) (rejecting same proposal for same reason). The district court, believing that the above construction raised serious constitutional questions, rejected it and concluded "the Secretary has the power to make exceptions to avoid inequity, whether that inequity flows from the deeming of income not actually available or from some other source."
 
 
 31
 We have already concluded that neither the statute nor the deeming regulation is unconstitutional insofar as the income of a parent or stepparent living in the same household as a disabled child is deemed to that child, thus reducing or eliminating the child's benefits, even though the income may not in some cases be actually available to the child. Part II A, supra. Especially in light of this, the Secretary's construction of 42 U.S.C. § 1382c(f)(2) cannot be held erroneous. The Secretary declined to create a blanket exclusion from deeming for all income that might be unavailable income; instead, the Secretary singled out certain types of fairly clear unavailability for exceptions (e. g., income needed to meet the minimum living expenses of parents and siblings), but not others (e. g., income legally but not, necessarily, in fact unavailable to the child because the stepparent has no legal duty of support). Rejection of the blanket approach is consistent with the statutory language. The phrasing of 42 U.S.C. § 1382c(f)(2) indicates that Congress anticipated the eventuality that the income and resources of a parent or stepparent might not, for one reason or another, actually be available to the disabled child, but provided, nonetheless, that deeming occur despite unavailability "except to the extent determined by the Secretary to be inequitable under the circumstances." The statutory language indicates that whether or not parental or stepparental income was available to the child, its exclusion was to be the exception, not the rule, and was to be justified, if at all, only by the Secretary's affirmative determination of inequity.
 
 
 32
 The district court went too far in assuming that the Secretary was required under 42 U.S.C. § 1382c(f)(2) to exercise discretion to exclude from deeming, income of a stepparent who has no legal support obligation. As the statute contemplates that in ordinary circumstances, income of a "spouse of . . . a parent," i. e., a stepparent, will be deemed to a child notwithstanding actual unavailability, the fact that Rhode Island, like many states, has not departed from the general rule that a stepparent has no legal obligation to support a stepchild, see Annot., 75 A.L.R.3d 1129, 1132 (1977); 59 Am.Jur.2d, Parent and Child, § 91, by itself presents no special circumstance compelling the exercise of the Secretary's discretion. For reasons already indicated, Part II A supra, we think the Secretary could rationally determine that the equities favoring exclusion of stepchildren, as a class, from deeming were not so strong as to justify the exercise of his discretion.
 
 
 33
 Plaintiffs argue the Secretary's exclusions for the necessary living expenses of the parents, set at SSI benefit levels, is arbitrary and capricious because the Secretary failed to take into account all factors relevant to a determination of an individual's true living needs. The Secretary explained the rationale for choosing the SSI figures as follows:
 
 
 34
 "In arriving at the amounts of the allocations for the . . . ineligible parents consideration was given to various alternatives. Among the alternatives considered were the amount of income based on the Bureau of Labor Statistics poverty levels, a flat percentage of the parent's income, and allocations equal to the amount of income that . . . (a) couple could have if they were applying for SSI benefits on their own behalf. It was decided that the allocations should continue to be based on consideration of the income exclusions and benefit rates under the SSI program. . . . (T)he new allocations . . . generally permit the ineligible . . . parents to set aside as much income as they could have before becoming ineligible for SSI payments, if they were applying on their own behalf. To increase the allocations above this point would greatly advantage people in the deeming situation over eligible beneficiaries not subject to deeming."
 
 
 35
 43 Fed.Reg. 39566 (Sept. 6, 1978).
 
 
 36
 We see nothing arbitrary or capricious in the Secretary's decision to set the parental living allowance exemption from deeming at the level of income which an individual or couple (as the case may be) eligible for SSI can have before becoming ineligible by reason of reaching the income ceiling set forth in 42 U.S.C. § 1382(a). True, as plaintiffs point out, aged, blind, or disabled persons whose incomes do not exceed the level specified in 42 U.S.C. § 1382(a) do not live on SSI benefits alone but also may receive food stamps, medicaid and state supplementation. That those lower income disabled persons receive certain supplementations is no warrant for nondisabled parents with incomes exceeding the § 1382(a) level to be accorded a greater living allowance exemption.
 
 
 37
 The district court regarded the SSI figure, a uniform national figure, as arbitrary because it does not take into account regional variations in the cost of living. The district court stated that the amount of supplementation states grant to disabled persons in accordance with 42 U.S.C. § 1382e as a reflection of the higher costs of living in that state should have been considered by the Secretary in setting the parental living allowance exemption from deeming figure. The published comments to the final deeming regulations indicate the Secretary considered and rejected an approach that would vary exemptions from state to state. The Secretary stated,
 
 
 38
 "Two commentators pointed out that the allowances for the needs of ineligible family members are unrelated to supplementation levels in the various States. . . . The allocations were developed to be applied to the deeming provisions as applicable to the basic national SSI program. The individual States can adjust the supplementation levels if they wish to reflect the cost of living as applicable in their State. To make the various deeming allowances reflect the supplementation levels would create a different allowance for each State, and living arrangement within each State and would be totally inconsistent with a national uniform program."
 
 
 39
 43 Fed.Reg. 39566-39567 (Sept. 6, 1978).
 
 
 40
 The Secretary's approach is not inconsistent with the federal SSI program. An objective of the 1972 amendments was to "replace the multiplicity of requirements and benefit payments under the existing State-operated programs" with "uniform eligibility requirements and uniform benefit payments." H.R.Rep.No. 92-231, 92d Cong., 2d Sess., reprinted in (1972) U.S. Code Cong. & Admin. News, pp. 4989, 5133. While "variations in living costs from one area to another" were recognized, that matter was left to be remedied by the states which were permitted, but not required, to supplement the benefits accorded under the federal program. Id. 5185; 42 U.S.C. § 1382e.[8]
 
 
 41
 Plaintiffs also challenge the work expense exclusion as it existed under the 1974 regulations, 39 Fed.Reg. 2487, 2488 (Jan. 22, 1974). (Plaintiffs do not attack the subsequent regulations in this respect.) The 1974 regulations provided that "in the case of earned income . . . of the parent and spouse of such parent, such earned income will be reduced by $65 a month (or the amount of earned income if less than $65) for all expenses attributable to the earning of such income." Section 416.1185(b), 39 Fed.Reg. 2488 (Jan. 22, 1974).
 
 
 42
 The purpose, as stated in a memorandum from the Commissioner of Social Security to the Secretary, of the so-called work expense exclusion was to remove a disincentive. The memo recommended that "where the ineligible ([9] spouse or parent has earnings rather than only unearned income ([10] . . . an additional $65 be set aside in recognition of work expenses before deeming the remainder," for the following reason:
 
 
 43
 "Since there is no policy distinction between earned and unearned income for deeming purposes, and a dollar for dollar reduction in payments applies, there is a disincentive to continue working as a means of providing at least partial self support at relatively low income levels in a substantial proportion of (studied) cases."
 
 
 44
 We cannot say that the $65 exclusion was not rationally related to the attainment of the stated objective and thus the fact that $65 may not reflect the actual expenses connected with producing income does not render the exclusion arbitrary.[11]
 
 
 45
 We thus conclude that the challenged regulations are not invalid because arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.
 
 
 46
 C. The procedures followed in adopting the regulations.
 
 
 47
 Plaintiffs argue that the Secretary failed to comply with informal rulemaking procedures, 5 U.S.C. § 553, in promulgating the 1974 and 1977 regulations.[12] (Plaintiffs have not articulated any procedural objections to the final regulations.)
 
 
 48
 Section 553 generally requires an agency first, to publish notice of proposed rulemaking stating "either the terms or substance of the proposed rule or a description of the subjects and issues involved," 5 U.S.C. § 553(b); second, to give interested persons an opportunity to participate in the rulemaking and to consider the relevant matter presented, 5 U.S.C. § 553(c); and third, to publish the rule the agency subsequently adopts "not less than 30 days before its effective date," 5 U.S.C. § 553(d). Here, notice of the proposed interim deeming regulations was first published January 22, 1974 and the rules were made effective from January 1, 1974 until federal regulations were adopted. Thus, the Secretary did not comply with all of the above procedures. Section 553, however, does provide exceptions. The prior notice and comment procedure may be dispensed with "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest," section 553(b)(B), and the thirty-day waiting period may be shortened or eliminated "for good cause found and published with the rule," 5 U.S.C. § 553(d)(3). No statement of reasons for dispensing with the prior notice and comment procedures or for immediate effectiveness of the regulations was published in the January 22, 1974 notice of interim deeming regulations.
 
 
 49
 The Secretary, pointing to an October 3, 1973 notice of rulemaking, 38 Fed.Reg. 27406, appears to take the position that the prior notice and comment procedures were complied with. Basically, the Secretary's position seems to be that the January 22, 1974 interim regulations were but an amendment of those signalled by the October 3, 1973 notice. Interested persons were afforded an opportunity to comment on the October 3, 1973 proposal, and as adoption of regulations varying from those originally proposed does not necessarily trigger a new round of commenting, South Terminal Corp. v. EPA, 504 F.2d 646, 659 (1st Cir. 1974), section 553 notice and comment requirements have arguably been satisfied. We disagree. The October 3, 1973 notice, while addressed generally to the subject of income and exclusions from income of persons eligible for SSI benefits, totally failed to deal with the aspect covered by the January 22, 1974 regulations implementation of 42 U.S.C. § 1382c(f)(2) by specifying what parental income would be attributed to a disabled child.[13] Consequently, the October 3, 1973 publication did not serve as notice of the January 22, 1974 interim deeming regulations. Compare Rodway v. United States Department of Agriculture, 514 F.2d 809, 814 (D.C.Cir.1975) (broad notice of intent to revise the operation of the food stamp program was insufficient to include the allotment system by inference).
 
 
 50
 We next consider, as a further possible basis for upholding the 1974 regulations, whether good cause existed for dispensing with prior notice and comment procedures. Contrary to the mandate of section 553(b)(B), the Secretary did not incorporate a finding that "notice and public procedures" were "impracticable, unnecessary, or contrary to the public interest," into its January 22, 1974 notice.[14] The failure to incorporate an adequate statement of good cause for dispensing with prior notice and comment has not been held fatal if good cause indeed existed. DeRieux v. Five Smiths, Inc., 499 F.2d 1321, 1333 (Em.App.1974), cert. denied, 419 U.S. 896, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974). The Secretary argues good cause was abundant and obvious. The SSI program had gone into effect January 1, 1974 and the interim regulations were necessary to administer the program. The time constraints rising from the need to implement new legislation, while a factor to consider, U.S. Steel Corp. v. EPA, 595 F.2d 207, 213 (5th Cir. 1979), do not suffice here to establish good cause for omitting prior notice and comment procedures. The section 553(b)(B) exception where "notice and public procedure" are "impracticable, unnecessary, or contrary to the public interest" is narrowly construed. National Nutritional Foods Association v. Kennedy, 572 F.2d 377, 384-85 (2d Cir. 1978) (Friendly, J.); American Iron & Steel Institute v. EPA, 568 F.2d 284, 292 (3d Cir. 1977).
 
 
 51
 " 'Impracticable' means a situation in which the due and required execution of the agency functions would be unavoidably prevented by its undertaking public rule-making proceedings. 'Unnecessary' means unnecessary so far as the public is concerned, as would be the case if a minor or merely technical amendment in which the public is not particularly interested were involved. 'Public interest' supplements the terms 'impracticable' or 'unnecessary'; it requires that public rule-making procedures shall not prevent an agency from operating and that, on the other hand, lack of public interest in rule-making warrants an agency to dispense with public procedure."
 
 
 52
 National Nutritional Foods Association v. Kennedy, 572 F.2d at 385 quoting from Senate Rep.No. 752, 79 Cong., 1st Sess. (1945). The Secretary has not met this standard. Fourteen months intervened between the passage of the 1972 amendments and their effective date. No explanation appears why the Secretary could not have published "a description of the subjects and issues involved," 5 U.S.C. § 553(b)(3), allowed interested persons an opportunity to submit their views, and considered the submissions in formulating the interim deeming regulations. Compare U.S. Steel Corp. v. EPA, 595 F.2d at 213 (six-month Congressional deadline did not excuse agency failure to comply with prior notice and comment procedures); Sharon Steel Corp. v. EPA, 597 F.2d 377 (3d Cir. 1979) (same).[15]
 
 
 53
 Nor does the fact that the regulations were only interim ones and that interested persons were given an opportunity to comment following their promulgation excuse the Secretary's departure from section 553 procedures, for the purpose of prior notice and comment is to afford persons an opportunity to influence agency action in the formulative stage, before implementation, when the agency is more likely to be receptive to argument. Sharon Steel Corp. v. EPA, 597 F.2d at 381; U.S. Steel Corp. v. EPA, 595 F.2d at 214-15; see also American Iron & Steel Institute v. EPA, 568 F.2d at 292 n.4.
 
 
 54
 We therefore agree with plaintiffs that the 1974 regulations, but not the 1977[16] or 1978 ones, were procedurally defective and hence invalid. Generally where an agency has failed to comply with section 553 notice and comment procedures in promulgating regulations to administer a federal program, the appropriate course is to remand to the agency for new rulemaking. See, e. g., Rodway v. Department of Agriculture, 514 F.2d at 817. Here, as deeming regulations in compliance with the APA have since been issued, we see no warrant for a remand for new rulemaking to cover the interim period.
 
 
 55
 The district court indicated that plaintiffs would be entitled to have the 1977 regulations, the first ones validly promulgated, applied retroactively to compute plaintiffs' benefits from January 1974. The district court justified this approach on the ground that "had appropriate procedures been followed (the 1977) provisions might very well have been in effect all along." The Secretary challenges this relief on two grounds. First, the Secretary argues the procedural irregularities should be regarded as harmless error justifying no relief, and second, the Secretary contends the district court's reasoning is entirely conjectural because there is no basis to conclude that the Secretary's view of equity in 1977 (as manifested by the 1977 regulations) would have been his view of equity in 1974 had notice and comment procedures been followed.
 
 
 56
 We reject the Secretary's harmless error argument. U.S. Steel Corp. v. EPA, 595 F.2d at 215 (court will not assume plaintiff was not prejudiced by agency's failure to follow section 553's notice and comment procedure). Whether the basis upon which the district court awarded retroactive application of the deeming regulations is too speculative is a closer question. As the Secretary acknowledged, some, though not all, of the changes in the 1977 deeming rules were "the direct result of the comments received." 42 Fed.Reg. 3316. While the district court's retroactive application of the 1977 rules may be a reasonable attempt to place plaintiffs in the financial position they would have occupied had the Secretary adhered to the APA, we think greater exploration of the stimulus for the various changes and the potential impact upon the fisc is needed before that conclusion can be reached. Were the liberalization of the 1977 regulations the result of an error in the Secretary's reasoning being exposed, or of a factor previously overlooked being raised, there might be a stronger basis from which to conclude that had public input been received, the Secretary's flaw would have surfaced and hence the substance of the 1977 regulation would have been in effect in 1974. On the other hand, to give automatic retroactive application to the 1977 regulations partakes more of an assessment of a penalty upon the Secretary (which is not within the equitable power of the district court to do) than an effort to make plaintiffs whole for any harm resulting from the Secretary's procedural dereliction. Attention must also be paid to what precedential effects this ruling might have nationwide, and its economic impact. There is little or nothing concerning these matters in the present record. Hence, we conclude that the question of appropriate relief deserves more attention than the parties have accorded it, and we therefore vacate and remand to the district court for proceedings not inconsistent herewith.
 
 
 57
 The district court's judgment is affirmed only insofar as it holds the 1974 regulations invalid for failure to comply with 5 U.S.C. § 553 and is reversed in all other respects; the question of appropriate relief to redress the 5 U.S.C. § 553 violation is remanded to the district court for further proceedings.
 
 
 58
 ALDRICH, Senior Circuit Judge (concurring).
 
 
 59
 As one who participated in Boucher v. Minter, D.Mass., 1972, 349 F.Supp. 1240, from which plaintiffs would derive much support, I feel I should recite that I am entirely comfortable with its present rejection. The enormous enterprise which social insurance has become would fall of its own weight if practical, rule of thumb guidelines could not be established to avoid piece by piece scrutiny of every case. The Supreme Court having forcefully recognized that this is permissible even though occasional hardship is inevitable, Weinberger v. Salfi, 1975, 442 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522, the principle applies that there must be some reason in fact, or logic, before the agency's judgmental expertise is overruled. On the point here in issue the agency's experience is obviously considerable. I cannot think that it abused its discretion in choosing this rule rather than some other.
 
 
 
 [1]
 The SSI program, part of the 1972 amendments to the Social Security Act, was passed by Congress on October 30, 1972 to be effective January 1, 1974. Pub.L.No.92-603, Title III, § 301, 86 Stat. 1465 (1972)
 
 
 [2]
 Plaintiff Kollett started receiving SSI benefits effective January 1, 1974. Plaintiff, at that time, lived with his mother, stepfather, and three siblings in Rhode Island. Plaintiff alleged in his district court complaint that he did not receive income from his stepfather and argued that as Rhode Island does not obligate a stepparent to support a stepchild, the Secretary's deeming regulation was unconstitutional as applied to him. Plaintiff has since been adopted but seeks recovery of those benefits denied as a result of deeming his stepfather's income to him
 
 
 [3]
 Contrary to plaintiff's argument, neither VanLare v. Hurley, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975), Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970), nor King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), requires that only income actually available to a child be counted in computing his SSI benefit level. Those cases, involving conflicts between state AFDC regulations and federal law, were decided not on constitutional grounds but on statutory grounds not applicable here. The Secretary's regulations implementing the AFDC program prohibit a state from reducing benefits because of the "assumed contributions from non-legally responsible individuals living in the household." 45 C.F.R. § 233.90(a)(1) (1979). Only if a stepparent is required, under state law of general applicability, to support a stepchild "to the same extent that natural or adoptive parents are required to support their children," id., may the stepparent's income be taken into account for AFDC purposes. The Supreme Court, after reviewing the legislative history, concluded that Congress intended the word parent as used in section 406(a) of the AFDC program, 42 U.S.C. § 606(a) "to include only those persons with a legal duty of support." King v. Smith, 392 U.S. at 327, 88 S.Ct. at 2138. The Court concluded the Secretary's regulations were consistent with this approach and hence valid. Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561. Consequently, conflicting state regulations were inoperative. The statutory language in issue here, 42 U.S.C. § 1382c(f)(2), is different. It provides for deeming not only the income of a parent but also that of the "spouse of such a parent," i. e., stepparent. Against the common law background that a stepparent has no legal obligation to support a stepchild, Annot., 75 A.L.R.3d 1129, 1132; 59 Am.Jur.2d, Parent and Child, § 91, it cannot be concluded that Congress intended only the income of a person required under state law to support the child to be attributed to the child
 
 
 [4]
 We disagree with Hammond v. Secretary of HEW, 475 F.Supp. 675 (D.Colo.1979), which read the statutory words "determine," "inequitable," and "circumstances" to "imply a factual determination on an individual basis" not satisfied "by the perfunctory application of a set of regulations to a claim." Id., 678. Accordingly, the court ordered that the plaintiff, a stepchild, be given an opportunity to demonstrate his stepfather did not contribute to his support. Individualized hearing would require that the very problem Congress sought to avoid proving whether a stepparent living in the same household actually contributed to the child's support be confronted. Individualized determinations are not a constitutional requisite when, as here, "Congress can rationally conclude not only that generalized rules are appropriate to its purposes and concerns, but also that the difficulties of individual determinations outweigh the marginal increments in the precise effectuation of congressional concern which they might be expected to produce." Weinberger v. Salfi, 422 U.S. 749, 785, 95 S.Ct. 2457, 2476, 45 L.Ed.2d 522 (1975)
 
 
 [5]
 In Overton Park, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the Secretary of Transportation had acted, so far as appears, without any formalized procedure for public input. Where interested persons have not been afforded an opportunity to comment, as in Overton Park, it is more likely that significant factors will be overlooked or too easily discounted. In contrast, the holding of an informal rule-making, inviting public comment, such as occurred here, provides further assurance of agency exposure to the various considerations, and militates against post hoc review of the agency's reasoning process
 
 
 [6]
 Agency action may more readily be termed arbitrary when the agency has acted on the basis of "considerations that Congress could not have intended to make relevant," see discussion in Wong Wing Hang v. Immigration and Naturalization Service, 360 F.2d 715, 719 (2d Cir. 1966) cited in Overton Park, 401 U.S. at 416, 91 S.Ct. at 823, than when the agency has not specifically addressed each and every factor which cannot be termed irrelevant. After-the-fact application of the relevant factor test in the latter situation can all too easily become a back door method for a court to substitute its judgment for that of the agency, since it can always be said that the proponent of a different viewpoint overlooked, or gave too little consideration to, a particular factor a court thinks significant
 
 
 [7]
 This does not mean that an agency may ignore factors contained in a governing statutory standard, compare P.A.K. Transport, Inc. v. United States, 613 F.2d 351 (1st Cir. 1980); First Bank & Trust Co. v. Smith, 509 F.2d 663 (1st Cir. 1975), or a comment which, if true, would seriously call into question the rationality of agency action, compare South Terminal Corp. v. EPA, 504 F.2d 646, 662-67 (1st Cir. 1974). Both of the foregoing are the type of relevant factors whose disregard may render agency action invalid. Where the record before the court leaves substantial doubts whether matters of this sort have escaped the agency's attention, remand may be in order. First Bank & Trust Co. v. Smith, 509 F.2d 663
 
 
 [8]
 Plaintiffs' challenge to the exclusion the Secretary allows for the living expenses of any nondisabled children living in the same household is the same as the attack on the parental exclusion the amount fails to reflect regional cost-of-living variations. What we have said with regard to the parental exclusion applies equally to the child exclusion
 
 
 [9]
 Ineligible spouse or parent means one who is not eligible for SSI benefits
 
 
 [10]
 Earned and unearned income are defined in 42 U.S.C. § 1382a. Basically earned income is wages and net earnings from self-employment, and unearned income is all other income
 
 
 [11]
 Under 42 U.S.C. § 1382a(b)(4) certain persons eligible for SSI who earn income receive a larger exclusion than that provided to an ineligible spouse or parent under the 1974 regulations; sixty-five dollars per month plus one-half of the remainder of the earned income is excluded. It was not irrational for the Secretary initially to conclude that the full measure of the incentive statutorily accorded disabled individuals to encourage the earning of income likewise had to be given an able-bodied ineligible parent or stepparent in order to foster productivity or support
 Nor was the Secretary required to permit deductions of all work-related expenses on an individualized basis. Compare Knebel v. Hein, 429 U.S. 288, 294 n. 13, 97 S.Ct. 549, 553, 50 L.Ed.2d 485 (1977) (in determining income eligibility standards for food stamp, Secretary not required to provide for individualized consideration of employment-related expenses).
 
 
 [12]
 The Secretary has by regulation agreed to follow the rulemaking procedures of the APA. 36 Fed.Reg. 2532 (1971)
 
 
 [13]
 The October 3, 1973 proposed regulations defined, in section 416.1101(a) (2), the income of a disabled child to include "certain income of his parent and the spouse of such parent who live in the same household," without further elaboration. 38 Fed.Reg. 27407 (Oct. 3, 1973)
 
 
 [14]
 A week later the Secretary did publish a further notice stating that the deeming regulations (along with specified other regulations) had been given immediate effectiveness "in order to administer the supplemental security income program . . . ." 39 Fed.Reg. 3674 (Jan. 29, 1974). This does not qualify as a statement of good cause for dispensing with prior notice and comment procedures
 
 
 [15]
 The case upon which the Secretary relies, Vanderlip v. Califano, Civil No. 77-0523-LEW(P), slip op. (C.D. Cal. Feb. 27, 1979), dealt not with good cause for eliminating prior notice and comment under section 553(b)(B) but with good cause under section 553(d) to forego the 30-day waiting period before an adopted rule becomes effective. The section 553(d) deferral period is for the purpose of affording affected persons time to adjust to the rule. United States v. Gavrilovic, 551 F.2d 1099, 1104 (8th Cir. 1977); 3 Mezines, Stein, and Gruff Administrative Law 18.02(4), at 18-26. As plaintiffs have suggested no reason why such an adjustment interval was needed here or demonstrated any prejudice from the interim rule's being given immediate effect, and as the Secretary had an obvious need to administer the program, we conclude, under the circumstances, that the Secretary had good cause to make the interim deeming regulations immediately effective but not to bypass prior notice and comment procedures
 
 
 [16]
 The January 18, 1977 interim regulations were not procedurally deficient. While they were published with an immediate implementation date, a statement of good cause for dispensing with the section 553(d) 30-day waiting period accompanied them, and as they liberalized the prior deeming rules, immediate effectiveness was not prejudicial to plaintiffs