**Brian BROWN, et al.**

**v.**

**Margaret HECKLER, Secretary of Health and Human Services, et al.**

**Civ. A. No. 83-4168.**

United States District Court,
E.D. Pennsylvania.

April 26, 1984.

[redacted]

Mark A. Kaufman, Delaware County Legal Assistance Ass'n, Chester, Pa., for plaintiffs.

Wendy B. Kloner, Dept. of Justice, Washington, D.C., Joan K. Garner, Serena H. Dobson, Asst. U.S. Attys., Philadelphia, Pa., for defendant U.S.

John O. J. Shellenberger, Deputy Atty. Gen., Philadelphia, Pa., for defendant State of Pa.

## OPINION AND ORDER

VANARTSDALEN, District Judge.

Plaintiffs' complaint challenges as constitutionally infirm a federal welfare provision which requires the state to utilize a formula that includes certain amounts of a stepparent's earned income in computing the allowable aid available to a needy dependent child. The formula applies to stepparents irrespective of whether under state law a stepparent is legally obligated to contribute support to a stepchild. Presently before the court are the parties' cross motions for summary judgment. Both sides agree there is no genuine issue of material fact at issue. For the reasons that follow, plaintiffs' motion for summary judgment will be denied and defendants' motion will be granted.

### Background

On August 26, 1983, plaintiffs' filed a class action complaint challenging the constitutionality of section 602(a)(31) of Title 42, United States Code. Section 602(a)(31) is located in that part of the Social Security Act that provides "Aid To Families With Dependent Children." 42 U.S.C. §§ 601–615. Subchapter IV of the Social Security Act of 1935, 42 U.S.C. §§ 601–610, created the Aid to Families With Dependent Children (AFDC) program.[1] The program was originally enacted to assist certain needy dependent children.[2] The AFDC program was not intended, however, to assist all needy children. *See King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). It was enacted to provide aid to children of families where there was no one capable of being a "breadwinner":

Many of the children included in relief families present no other problem than that of providing work for the bread winner of the family. These children will be benefited from the work relief program and still more through the revival of private industry. But there are large numbers of children in relief families which will not be benefited through work program or the revival of industry.

These are the children and families which have been deprived of a father's support and in which there is no other adult than the one who is needed for the care of the children. These are principally families with female heads who are widowed, divorced, or deserted.

S.Rep. No. 628, 74th Cong., 1st Sess., 17 (1935).

Although the AFDC statute was amended a number of times after the original

---

1. The AFDC program, like many Social Security programs, is based on a scheme of cooperative federalism. It is financed by the Federal Government on a matching fund basis. The program is administered by the states. Although not required to participate, once a state elects to do so, it must file a plan with the Secretary of Health and Human Services and the state must comply with the applicable statutes and regulations. *King v. Smith,* 392 U.S. 309, 314–16, 88 S.Ct. 2128, 2131–32, 20 L.Ed.2d 1118 (1968).

2. The statute currently provides:

The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home (other than absence occasioned solely by reason of the performance of active duty in the uniformed services of the United States), or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) at the option of the State, under the age of nineteen and a full-time student in a secondary school (or in the equivalent level of vocational or technical training), if, before he attains age nineteen, he may reasonably be expected to complete the program of such secondary school (or such training).

42 U.S.C. § 606(a).

enactment in 1935, the only relevant change for purposes of this litigation occurred in 1981. Prior to 1981, regulations of the Department of Health, Education and Welfare (now the Department of Health and Human Services) mandated that only income and resources *in fact* available to a child for current use on a regular basis would be taken into consideration in determining need and the amount of payment. *Lewis v. Martin,* 397 U.S. 552, 555, 90 S.Ct. 1282, 1283, 25 L.Ed.2d 561 (1970). The Supreme Court stated that such regulations clearly comported with the AFDC Act. *King v. Smith,* 392 U.S. 309, 319 n. 16, 88 S.Ct. 2128, 2134 n. 16, 20 L.Ed.2d 1118 (1968). The Court later held, therefore, that absent proof of actual contributions, the state, in computing AFDC payments, could not consider the dependent child's resources to include either income of a nonadopting stepfather who was not legally obligated to support the child or income of a man assuming the role of a spouse. *Lewis v. Martin,* 397 U.S. at 559–60, 90 S.Ct. at 1285–86.

The lower state and federal courts also consistently invalidated state laws requiring inclusion of stepparent income for calculation of AFDC benefits, unless under state law stepparents were legally obligated to support their stepchildren. *See, e.g., Rosen v. Hursh,* 464 F.2d 731 (8th Cir. 1972); *Boucher v. Minter,* 349 F.Supp. 1240 (D.Mass.1972); *X v. McCorkle,* 333 F.Supp. 1109 (D.N.J.1970), *aff'd,* 404 U.S. 23, 92 S.Ct. 181, 30 L.Ed.2d 143 (1971); *Slochowsky v. Lavine,* 73 Misc.2d 563, 342 N.Y.S.2d 525 (N.Y.Sup.Ct.1973); *Kelley v. Iowa Dept. of Social Services,* 197 N.W.2d 192 (Iowa 1972), *appeal dismissed,* 409 U.S. 813, 93 S.Ct. 170, 34 L.Ed.2d 69 (1972) (stepparent support obligation coextensive with natural parents under state law).

In 1981, by virtue of the Omnibus Budget Reconciliation Act (OBRA), Pub.L. No. 97–35 § 2306(a), 95 Stat. 357 (1981), the AFDC Act itself was amended to include, with certain exemptions, stepparent's income. The AFDC Act now provides, in relevant part, that the State plan must

> provide that, in making the determination for any month under paragraph (7), the State agency shall take into consideration so much of the income of the dependent child's stepparent living in the same home as such child as exceeds the sum of (A) the first $75 of the total of such stepparent's earned income for such month (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in fulltime employment or not employed throughout the month), (B) the State's standard of need under such plan for a family of the same composition as the stepparent and those other individuals living in the same household as the dependent child and claimed by such stepparent as dependents for purposes of determining his Federal personal income tax liability but whose needs are not taken into account in making the determination under paragraph (7), (C) amounts paid by the stepparent to individuals not living in such household and claimed by him as dependents for purposes of determining his Federal personal income tax liability, and (D) payments by such stepparent of alimony or child support with respect to individuals not living in such household.

42 U.S.C. § 602(a)(31).

Plaintiffs, all children who have had AFDC benefits reduced as a result of the new provision, filed this class action complaint.[3] Plaintiffs challenge the stepparent provision on two constitutional grounds. First, plaintiffs contend the Act and regulations discriminate against a class of needy children based upon the marital status of the parent in violation of the equal protection clause. Plaintiffs' second allegation involves a contention that the due process

---

**3.** No class has ever sought to be certified in this litigation and consequently no class certification order was ever issued. Plaintiffs did seek a preliminary injunction order at a hearing on September 6, 1983. I denied plaintiffs' motion in an opinion delivered from the bench on that date. The primary reason for such denial was the determination that plaintiffs failed to establish a likelihood of success on the merits.

clause has been violated by creating an irrebuttable presumption that the income of the non-legally responsible stepparent is actually available to the class of needy children.

## Discussion

### 1. Plaintiffs' Equal Protection Claim.

Plaintiffs, in their memorandum of law supporting the motion for summary judgment, contend that "a heightened level of equal protection scrutiny" should be applied in this litigation. Absent such an application, however, plaintiffs assert that the challenged provision also fails to meet the rational basis standard of review. Defendants contend that the only applicable standard is rational basis review and that the challenged provision easily passes constitutional muster. Both sides agree there are no issues of material fact and disposition by summary judgment is appropriate.

It is now generally accepted by both the courts and commentators that in cases involving equal protection challenges the Supreme Court applies three levels of review in ruling on the validity of the challenged statute. *Price v. Cohen*, 715 F.2d 87, 91–92 (3d Cir.1983); L. Tribe, *American Constitutional Law* 991–1146 (1979); G. Gunther, *Constitutional Law* 670–971 (1980). *See generally*, Note, *Plyler v. Doe*, 28 Vill. L.Rev. 198 (1982).[4] The three tiers of review are the rational basis test, intermediate or "middle-tier" scrutiny and strict scrutiny. The term "heightened" scrutiny has come to signify any standard of review above rational basis. Because of the fairly predictable results which the application of each standard of review often engenders, the initial determination of which standard applies has become crucial.

■ The rational basis standard of review is the least intrusive standard and provides a presumption of constitutionality. The standard requires only that the law have a legitimate purpose and a rational relationship in the fulfillment of that purpose. The Court has stated that the legislature need not articulate the law's purpose if a legitimate purpose can be hypothesized. *See, e.g., Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

■ Strict scrutiny, on the other hand, carries with it a presumption of unconstitutionality. The challenged legislation must be narrowly tailored to achieving some compelling state interest. Strict scrutiny review has been limited thus far to classifications involving a "suspect" class, or which affect "fundamental rights" or "interests" protected by the Constitution. To date the Court has identified two classes or groups which clearly qualify as "suspect"; namely, racial or ancestral minorities and alienage. The Court has also identified a number of fundamental rights guaranteed by the Constitution and a number of fundamental interests implicitly protected by the Constitution that are deserving of strict judicial review.

Intermediate or "middle-tier" scrutiny falls somewhere on the continuum between rational basis and strict scrutiny. The Court's articulated standard requires that the challenged law be "substantially related" to "important governmental objectives." *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). This standard of review has been applied in equal protection challenges involving classifications which are sensitive but not suspect.

---

**4.** Certain members of the Supreme Court, however, may not agree. As recently as 1977, Justices Burger, Rehnquist and White acknowledged only two tiers of review: strict scrutiny and rational basis. *See Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979). However, in 1981 Justice Rehnquist admitted that "traditional minimum rationality takes on a somewhat 'sharper focus' when gender-based classifications are challenged." *Mi-chael M. v. Sonoma County Superior Court*, 450 U.S. 464, 465, 101 S.Ct. 1200, 1202, 67 L.Ed.2d 437 (1981) (plurality opinion by Justice Rehnquist). Justice Marshall continues to assert that the Court really applies a "sliding scale" standard of review. *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 70–133, 93 S.Ct. 1278, 1315–1348, 36 L.Ed.2d 16 (1973) (Marshall, J. dissenting).

It is clear that with respect to the three levels of review both the interest that the state or federal government has in the subject area of the legislation and the means chosen to reach the desired end intensify dramatically as one moves from rational basis to strict scrutiny. Placed on a continuum with the rational basis test on the left, intermediate scrutiny in the middle and strict scrutiny on the right, the degree of interest that must be exhibited by the state or federal government ranges from left to right in the following order: legitimate purpose, important governmental objective and, finally, compelling state interest. The required governmental interest increases drastically as one moves from left to right. The acceptable nexus between means and ends likewise intensifies as one moves from rational basis to strict scrutiny. Arranged on the same continuum, it appears as follows: a rational relationship, a substantial relationship and, finally, a narrow tailoring between means and ends.

Plaintiffs contend some form of "heightened" review is appropriate, *i.e.*, intermediate or strict scrutiny. A review of the applicable case law suggests otherwise.

Plaintiffs' argument for application of "heightened" scrutiny rests on the fact that children are involved. By virtue of their minority, it is argued, children are relegated " ' . . . to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.' " Plaintiffs' Supplemental Brief in Support of Motion For Summary Judgment at 7 (quoting *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 2401, 72 L.Ed.2d 786 (1982)).

The term "suspect" originated in one of the Japanese internment cases, *Korematsu v. United States*, 323 U.S. 214, 216, 65 S.Ct. 193, 194, 89 L.Ed. 194 (1944), wherein the court stated that "all legal restrictions which curtail the civil rights of a single racial group are immediately suspect." The strict review afforded suspect classifications has its foundation in the celebrated footnote of Justice Stone's majority opinion in *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152–53 n. 4, 58 S.Ct. 778, 783 n. 4, 82 L.Ed. 1234 (1938). Justice Stone opined, in an economic due process case, that the Court had no need to inquire "whether prejudice against discrete and insular minorities may be a special condition, which tends seriously to curtail the operation of those political processes ordinarily to be relied upon to protect minorities, and which may call for a correspondingly more searching judicial inquiry." Although occasionally the Court explains the identification of a suspect classification simply by repeating Justice Stone's phrase, the Court has articulated other factors to be considered:

> [A] suspect class is one "saddled with disabilities, or subjected to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." While the treatment of the aged in this Nation has not been wholly free of discrimination, such persons, unlike, say, those who have been discriminated against on the basis of race or national origin, have not experienced a "history of purposeful unequal treatment" or been subjected to unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities. The class subject to the compulsory retirement feature of the Massachusetts statute consists of uniformed state police officers over the age of 50. It cannot be said to discriminate only against the elderly. Rather, it draws the line at a certain age in middle life. But even old age does not define a "discrete and insular" group, *United States v. Carolene Products Co.*, 304 U.S. 144, 152–153, n. 4, 58 S.Ct. 778, 784 n. 4, 82 L.Ed. 1234 (1938), in need of "extraordinary protection from the majoritarian political process." Instead, it marks a stage that each of us will reach if we live out our normal span. Even if the statute could be said to impose a penalty upon a class defined as the aged, it would not impose a distinction sufficiently akin to those classifications that

we have found suspect to call for strict judicial scrutiny.

*Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 313–14, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976). *See also Price v. Cohen,* 715 F.2d at 93 (age group between 18 and 45 not a "discrete and insular" group in need of "extraordinary protection from the majoritarian political process.").

■ There are several difficulties with plaintiffs' position that a suspect classification is involved. Plaintiffs attempt to take a lone phrase from a Supreme Court opinion, out of context, and argue that children are "relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." However, one cannot simply lift a single phrase from a Supreme Court opinion and present it as proof positive that this court must apply strict judicial review. This case must be considered in the entire context of the Supreme Court decisions. As a whole, those cases, at the least, clearly reveal that the group must be a "discrete and insular" minority which because of a history of purposeful or unequal treatment or the application of unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities, need extraordinary protection from the majoritarian political process. Both *Murgia* and *Price* strongly suggest that age alone does not define such a group.

Another serious flaw in plaintiffs' argument arises even if children could be defined as a discrete group in need of extraordinary protection. The two classes plaintiffs contend are similarly situated are (1) children whose natural parent or guardian has remarried, thus giving those children a non-adopting stepparent, and (2) children whose natural parent has not remarried but may cohabitate with a member of the opposite sex. It is obvious that the discrimination, if any, results not from the age of the children or the fact that they are children but from the remarriage of the parent or guardian. The provision challenged as violating equal protection does not in any way discriminate against children vis-à-vis adults because of their age, nor does it discriminate against children as an identifiable minority class.

Examples of laws which use the age of children as a basis for classification abound: voting age requirements, drinking age requirements, driving age requirements, etc. In short, even if children because of age constituted a suspect class, the challenged provision does not discriminate on the basis of age. The only reason children are involved is because the AFDC statute itself provides benefits only to families with needy dependent children. The "suspect" class, if applicable in this case, would have to be children whose natural parent or guardian remarried. There is absolutely no support in the relevant case law, or any logical extension thereof, that such a group qualifies as a suspect class. There is no history of purposeful discrimination or unequal treatment based upon some stereotypical characteristics not indicative of the group's true abilities. Children whose parents have remarried are not a discrete and insular minority in any sense contemplated by the Court.

■ Plaintiffs also contend that strict scrutiny applies because the fundamental rights to marry, privacy and the legitimacy of the child have been impinged. This contention misses the mark for several reasons. First, as to any alleged infringement on the right to marry or privacy, the challenged provision is only an indirect interference. The Supreme Court has consistently held that only direct infringements upon fundamental rights trigger strict scrutiny. *See, e.g., Carey v. Population Services International,* 431 U.S. 678, 688, 97 S.Ct. 2010, 2017, 52 L.Ed.2d 675 (1977) (substantially limiting access to means of effectuating the decision); *Gray Panthers v. Administrator, HCFA,* 566 F.Supp. 889, 893 (D.D.C.1983). There is no direct interference with privacy or marital rights. There are quite a large number of state and federal laws which indirectly affect both privacy and marital rights, *e.g.,* welfare and tax laws. None of these laws are any more or

less burdensome than the stepparent provision.

Second, any argument that the challenged law discriminates on the basis of illegitimacy is frivolous. The mere fact that some of the affected children may be illegitimate does not transform the statute's purpose or effect; neither of which discriminates against illegitimate children because they are illegitimate, or for any other reason. The statute in no way reduces or increases aid to a dependent child by reason of the legitimacy of the child.

Lastly, I have serious doubts whether the plaintiff children have the requisite standing to challenge the provision on the grounds of right to marry or privacy. Both concerns appear to be more properly those of their parents. Nevertheless, the holdings above make it unnecessary to resolve this question.

■ Plaintiffs also contend that intermediate or middle-tier scrutiny applies. This level of review, it has been stated, applies if sensitive but not suspect classifications alone are involved, or if a combination of sensitive criteria of classification with important liberties or benefits is at issue, or if an important liberty or benefit alone is at stake. L. Tribe, *American Constitutional Law* at 1090 & n. 10 (collecting cases). It is beyond argument that there is no constitutionally protected right to receive welfare. The Supreme Court has consistently rejected any attempt to require the state or federal government to justify economic and social policies by showing some compelling interest. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

■ The classification at issue has never, to my knowledge, been held to be a sensitive class. I see no reason under applicable law why such a group should be so considered. Likewise, the benefit or interest involved, the receipt of welfare payments through the AFDC program, has

never been sufficient to trigger intermediate level review. Finally, a combination of the two does not convince me any "intensive" or "heightened" judicial scrutiny should apply.[5] As was the case in *Murgia, Price* and a host of other challenged welfare provisions, the rational basis test is the proper standard of review.

Under the rational basis test, challenged legislation will be upheld unless a plaintiff can demonstrate that the classification at issue does not bear a rational relationship to a legitimate government interest. *Matthews v. Lucas*, 427 U.S. 495, 510, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651 (1976).

■ The stepparent provision of the AFDC program was part of a comprehensive program to control rapidly rising federal expenditures. S.Rep. No. 139, 97th Cong., 1st Sess. 3, *reprinted in* 1981 U.S. CODE CONG. & AD.NEWS 396, 397–98. Congress' general view was that "[t]hese spending reductions are necessary in order to wage an effective battle against the high inflation and unemployment which have plagued the national economy for many years." *Id.* at 398. Particular reference was made to the AFDC program and an explanation for the proposed changes revealed:

> The committee believes that this provision would prevent situations in which children receive AFDC even while they are an integral part of a family which may have substantial income.

*Id.* at 773.

The Third Circuit has already opined what it believed the primary purpose of the OBRA amendments to the AFDC program to be:

> The primary purpose of the OBRA amendments to the AFDC program is to reduce or eliminate welfare benefits for those considered by Congress to be less needy than those completely without resources—perhaps or households that

---

**5.** The reasons for my holding as to intermediate level review are explained in that part of the opinion discussing strict scrutiny. In other words, there is no support for plaintiffs' claim

that "heightened" scrutiny applies. The overwhelming weight of authority leads to the inescapable conclusion that a rational basis review is the proper standard of review.

have available other income or resources with which to support themselves.

*Philadelphia Citizens in Action v. Schweiker*, 669 F.2d 877, 879 (3d Cir.1982). The Supreme Court and other lower federal courts have consistently held that allocation of scarce public resources to those most in need is a legitimate government interest. *Schweiker v. Hogan*, 457 U.S. 569, 590, 102 S.Ct. 2597, 2610, 73 L.Ed.2d 227 (1982); *Califano v. Boles*, 443 U.S. 282, 296, 99 S.Ct. 2767, 2775, 61 L.Ed.2d 541 (1979); *Price v. Cohen*, 715 F.2d at 94. There is no doubt Congress had a legitimate purpose in passing the stepparent provision of AFDC.

The remaining consideration is whether including certain portions of the stepparent's income for purposes of determining AFDC benefits was rationally related to this legitimate interest.

Given Congress' legitimate purpose in redistributing limited resources to those most in need, the stepparent provision of the AFDC is certainly rationally related to achieving that purpose. The foundation of plaintiffs' equal protection challenge rests on the assertion that children whose natural parent or guardian has remarried are similarly situated to children whose natural parent or guardian cohabitates with a member of the opposite sex. However, the two groups are not similarly situated and Congress' recognition of this fact is eminently reasonable.

The first and most obvious difference between the two groups is the very fact that in the first case the adult responsible for the child has remarried. The two adults have voluntarily entered into a relationship which by its nature admits of a more permanent bond than a non-matrimonial relationship. Marriage, with all its attendant legal and moral responsibilities, changes the family situation. Plaintiffs are absolutely correct that the stepparent has no legal duty (absent adoption or state law) to support the stepchildren. However, despite plaintiffs' protestations to the contrary, that is not determinative. The issue is whether Congress' classification is ra-

tionally related to the legitimate purpose of allocating scarce resources. Congress drew the line between married and non-married adults with whom the affected children reside. Such a distinction is rationally related to achieving the desired end.

Congress could easily have believed that due to the inherent difficulties involved with non-marital cohabitational relationships, income from such individuals could not be counted toward AFDC benefits. The transient nature of such relationships does not lend itself to accurately keeping track of the relationship, or any income that might be available from such association. The non-matrimonial situation contains none of the legal or moral obligations of a married couple. The logistics of keeping accurate records of such cohabitional relationships alone would be impractical. That Congress chose to draw the classification around the greater stability engendered by a marital relationship is altogether rationally related to the purpose of allocating scarce public funds. The marital commitment may be the cement that binds a family together. That a marriage can later be dissolved by taking appropriate legal procedures does not mean there was no reason for having the bond in the first place. Without the legal bond of matrimony, the relationship is subject to dissipate at the slightest ripple of uneasiness or dissatisfaction for whatever reason or for no reason.

Congress could also rationally have assumed that the stepparent would ordinarily provide financial support to the natural parent or guardian of the child. "Both tradition and common experience support the conclusion that marriage is an event which normally marks an important change in economic status" and that "marriage traditionally brings changed responsibilities." *Califano v. Jobst*, 434 U.S. 47, 53, 54 n. 11, 98 S.Ct. 95, 99, 100 n. 11, 54 L.Ed.2d 228 (1977). It is entirely appropriate for Congress to conclude that the child's natural parent or guardian would probably use any such income contributed

by the stepparent for the child's benefit.[6] Congress has legitimately recognized the reality that there is another income source which may contribute, in some way, to the family and the benefit of the dependent child.

In sum, Congress had a legitimate purpose in reallocating scarce resources to those most in need. Congress also acted rationally with respect to the AFDC stepparent provision by recognizing the common-sense proposition that individuals living with others ordinarily have reduced per capita costs due to the sharing of expenses. Finally, the classification that Congress chose was entirely appropriate. The classification does not treat similarly situated individuals differently. There is no equal protection violation.

2. Plaintiffs' Due Process Claim.

▮ Plaintiffs' second contention involves a claim that the challenged law creates an irrebuttable presumption that the stepparent's income is actually available to the child in violation of due process.

I have serious doubts whether the so-called "irrebuttable presumption" doctrine has any vitality in cases such as this where eligibility determinations for social welfare benefits are involved. *See Weinberger v. Salfi*, 422 U.S. 749, 771–72, 95 S.Ct. 2457, 2469–70, 45 L.Ed.2d 522 (1975). *See also Knebel v. Hein*, 429 U.S. 288, 296–97, 97 S.Ct. 549, 554–55, 50 L.Ed.2d 485 (1977); *Gray Panthers v. Administrator, HCFA*, 566 F.Supp. 889, 892 (D.D.C.1983). Be that as it may, focusing upon the proper analysis leads to the conclusion that there is no violation of due process.

In *Malmed v. Thornburgh*, 621 F.2d 565 (3d Cir.), *cert. denied*, 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980), the Third Circuit set forth a cogent explanation of the "irrebuttable presumption" doctrine:

Of uneasy definition and uncertain status, the doctrine emanates from a series of Supreme Court decisions from 1971 to 1974. [citations omitted]. Each of these cases involved a statute containing rules that denied a benefit or placed a burden on all individuals possessing a certain characteristic. The characteristic is the basic fact from which a presumed fact is inferred. These decisions held that if it "is not necessarily or universally true in fact" that the basic fact implies the presumed fact, *Vlandis v. Kline*, 412 U.S. at 452, 93 S.Ct. at 2236, then the statute's irrebuttable presumption denies due process of law. Its very name suggests an analysis grounded on formal logic, and a careful examination of the Supreme Court decisions that have applied it supports the conclusion that the doctrine is but another way of stating that a presumed fact must be based on reason, and that if a plaintiff demonstrates that the inference is not "rationally related" to a legitimate legislative classification, the inference will not pass constitutional muster.

*Id.* at 573–74 (footnote omitted). The analysis set out above with respect to the plaintiffs' equal protection challenge goes far toward resolving this question, although the precise focus there was on the classification and here it is on the presumption.

The presumed fact or inference of the stepparent provision of the AFDC is that for purposes of determining benefits certain income of the stepparent will be attributed to the child. This presumed fact is certainly "based on reason." An adult married to and living in a familial setting with a natural parent or guardian who has children can be presumed in most cases to contribute to the maintenance of the child. *See Kollett*, 619 F.2d at 139. If the contributions are not direct payments to maintain the child, there will at least be indirect payments through the sharing of fixed expenses. *See Termini v. Califano*, 611 F.2d 367, 370 (2d Cir.1979) ("rational basis is supplied by the common sense proposition

6. In *Kollett v. Harris*, 619 F.2d 134, 139 (1st Cir.1980), the court noted that "Congress could conclude that ordinarily a stepparent living with a stepchild does and will support the child, even though not legally required to do so, and therefore the child is not likely to be in need of public assistance."

that individuals living with others usually have reduced per capita costs because many of their expenses are shared").

The presumption or inference that Congress adopted for purposes of allocating public funds for needy dependent children is that dependent children who live in a household wherein there is a stepparent who has available independent sources of income (above a prescribed minimum and free from specified obligations) are less likely to be in need of publicly funded financial aid than dependent children who live. in a household in which there is a single adult or adults who are not married to each other. Although it is not inevitable or certain that children living in a household with a stepparent who has a source of income will be in less need than those living with a single parent, it is a reasonable basis upon which to make a distinction. Congress has conscientiously sought to provide aid to those most likely to be in dire need. This is rationally related to a legitimate purpose. The classification, although it may not be perfect, is certainly rational, and one well within the constitutional power of Congress.

*Conclusion*

Ideally perhaps, financial aid should be tailored to the individual needs of each child, based on individual evaluations. Such a system is neither feasible nor constitutionally mandated. Classifications based on the likelihood of need become the alternative solution. The Supreme Court has concluded that the Constitution affords Congress and the state legislatures "wide latitude in choosing among competing demands for limited public funds." *Maher v. Roe,* 432 U.S. 464, 479, 97 S.Ct. 2376, 2385, 53 L.Ed.2d 484 (1977). So long as Congress allocates the funds in a rational manner in distributing welfare assistance, it meets its constitutional requirements. Congress has done so in respect to the "stepparent" provision of the AFDC program, 42 U.S.C. § 602(a)(3). Plaintiffs' equal protection, due process, and all other challenges of constitutional infirmity fail.